■ JULIAN WAGER et al., Respondents, v BRIAN HAINLINE, Appellant, et al., Defendants. [815 NYS2d 121]—

In an action to recover damages for medical malpractice, etc., the defendant Brian Hainline appeals from so much of an order of the Supreme Court, Queens County (Golia, J.), dated September 9, 2004, as denied that branch of his motion, made jointly with the defendants Daniel Breitstein, Kathy Gorham, and Prohealth Care Associates, LLP, which was for summary judgment dismissing the complaint insofar as asserted against him.

Ordered that the order is reversed insofar as appealed from, on the law, with costs, that branch of the motion which was for summary judgment dismissing the complaint insofar as asserted against the defendant Brian Hainline is granted, and the complaint insofar as asserted against that defendant is dismissed.

In an action to recover damages for medical malpractice, the defendant Dr. Brian Hainline moved, with other defendants, for summary judgment. In support of the branch of the motion relating to Hainline, he included his own affidavit and that of an

expert which, in substance, asserted that Hainline's treatment of the injured plaintiff Julian Wager (hereinafter the plaintiff) was at all times appropriate and was not a proximate cause of the plaintiff's injuries. More particularly, Hainline submitted proof that the plaintiff had a significant history of back ailments necessitating prior surgeries in 1995 and 1996—three years prior to the plaintiff's first treatment by Hainline. Hainline initially diagnosed the plaintiff with cervical stenosis, a degenerative narrowing of the spinal column, and neurological treatment was administered accordingly. On March 8, 2000, the plaintiff saw Hainline complaining of pain in his left leg and shaking, dragging, and lack of control in his right leg. Hainline prescribed treatment and a myelogram which was performed (by another doctor) on March 10, 2000. The plaintiff contends that Hainline was advised that while the myelogram confirmed his diagnosis of severe degenerative stenosis, it also revealed that diagnosis of all areas of the back could not be completed due to cervical compression and cervical myelopathy—a condition which plaintiff alleged was emergent and required immediate medical intervention. The myelogram results were faxed to Hainline on March 13, 2000.

At the plaintiff's next scheduled appointment on March 15, 2000, due to the plaintiff's increased complaints and the worsening of the stenosis, Hainline recommended that the plaintiff be evaluated by a spinal surgeon for potential decompressive surgery. Later that afternoon the plaintiff saw the surgeon, who reported that the plaintiff was suffering from paralysis in his legs. Surgery was performed the following day, but despite the surgery the plaintiff never regained the use of his lower extremities.

To the extent pertinent here, the plaintiffs contend that the emergent nature of the plaintiff's condition should have been correctly diagnosed by Hainline on March 8, 2000. Hainline denies that allegation. These two conflicting views formed the basis of the instant motion for summary judgment.

Hainline and several other defendants submitted their motion for summary judgment within the time set forth in CPLR 3212. Hainline submitted his own affidavit along with an affidavit from a medical expert. To the extent pertinent here, Hainline's submissions demonstrated that the plaintiff suffered from cervical stenosis and thoracic myelitis. Hainline stated that the alleged failure to diagnose the thoracic myelitis was of no moment since there is no effective treatment for the condition and thus none of his actions were the cause of the ensuing paralysis of the plaintiff's legs. The plaintiffs submitted an

expert neurologist's affidavit stating that the presence of the thoracic myelitis was only confirmed after the plaintiff's surgery (i.e., implying that it was not the cause of his paralysis) and that the failure to timely act upon worsening cervical myelopathy and cervical cord compression was the proximate cause of the paralysis of the plaintiff's legs.

At the heart of the present appeal is Hainline's contention—advanced by reply affidavit on his motion for summary judgment before the Supreme Court—that the expert neurologist's affidavit submitted by the plaintiffs violated an outstanding discovery order and therefore should not have been considered. The fact that Hainline raised his objection to the violation of the discovery order for the first time in his reply affidavit is of no moment since the objection did not arise until the plaintiffs' opposition was interposed. The general rule that arguments raised for the first time in a reply are not properly before the court therefore does not apply here (*cf. Adler v Suffolk County Water Auth.*, 306 AD2d 229 [2003]).

The Supreme Court should not have considered the expert neurologist's affidavit submitted by the plaintiffs because it violated the express terms of the discovery order and CPLR 3101 (d) (*see Ortega v New York City Tr. Auth.* 262 AD2d 470 [1999]; *Grassel v Albany Med. Ctr. Hosp.*, 223 AD2d 803 [1996], citing, inter alia, *Lasek v Nachtigall*, 189 AD2d 749 [1993]). The fact that Hainline's expert affidavit may also have violated the discovery order is raised by the plaintiffs for the first time on this appeal, and, in any event, is irrelevant. Moreover, Hainline's own affidavit was sufficient to establish the absence of any issue of fact as to the proximate cause of the paralysis of the plaintiff's legs.

Additionally, even if the plaintiffs' expert neurologist's affidavit was considered, the affidavit failed to adequately rebut Hainline's showing that no issue of fact existed as to proximate cause. The conclusory assertions of the plaintiffs' medical expert are simply insufficient to defeat a motion for summary judgment (*see Diaz v New York Downtown Hosp.*, 99 NY2d 542 [2002]; *Amatulli v Delhi Constr. Corp.*, 77 NY2d 525 [1991]; *Marone v Gopinathan*, 267 AD2d 216 [1999]; *Dachille v Good Samaritan Hosp.*, 207 AD2d 373 [1994]). Significantly missing from the affidavit is any indication of the relationship between the alleged failure to timely diagnose and treat and the paralysis. There is no statement that the failure to provide medical treatment in the absence of confirmatory diagnoses was an unacceptable deviation from sound medical practice (*see Wind v Cacho*, 111 AD2d 808 [1985]). There is no reference to the need

for emergent medical intervention and the potential consequences of the failure to act within the time indicated. Nor was there any unequivocal statement that, had the emergent care been provided, there is a substantial likelihood that the plaintiff would not have suffered from paralysis. Significantly, the plaintiffs' expert neurologist was unable to offer an opinion that the thoracic myelitis, if present, was not a cause of the plaintiff's paralysis. Because the plaintiffs were not able to demonstrate that a bona fide question of fact existed, that branch of Hainline's motion which was for summary judgment dismissing the complaint insofar as asserted against him should have been granted (*see Anderson v Lamaute*, 306 AD2d 232 [2003]; *DiMitri v Monsouri*, 302 AD2d 420 [2003]). Crane, J.P., Luciano, Skelos and Lifson, JJ., concur.