■ SARAH VIDENOVIC, Also Known as STOJA VIDENOVIC, Appellant, v JACK GOODMAN et al., Respondents. [864 NYS2d 496]—

In an action to recover damages for medical malpractice, etc., the plaintiff appeals from an order of the Supreme Court, Dutchess County (Pagones, J.), dated May 2, 2007, which granted the motion of the defendants Jack Goodman and Jack Goodman M.D., P.C., and the separate motions of the defendant William Teubl, sued herein as William Teubel, and the defendant Mid-Hudson Family Health Services Institute, for summary judgment dismissing the complaint insofar as asserted against each of them.

Ordered that the order is reversed, on the law, with one bill of costs payable to the plaintiff by the defendants appearing separately and filing separate briefs, and the motions for summary judgment are denied.

On October 2, 2003 Velibor Videnovic, then 64 years old, was treated at the emergency room at Northern Dutchess Hospital after experiencing shaking in his left arm and leg. He was diagnosed as having suffered a transient ischemic attack (hereinafter TIA), or mini-stroke. On October 6, 2003 Videnovic underwent an extracranial carotid ultrasound examination, which revealed 60-79% stenosis (blockage) in his right internal carotid artery and 80-99% stenosis in his left internal carotid artery. These results were described as a "significant change" from a prior examination administered several years earlier. A magnetic resonance angiograph (hereinafter MRA) was recommended. On October 8, 2003 the defendant Mid-Hudson Family Health Services Institute (hereinafter Mid-Hudson) was notified of the hospital visit and the tests performed on Videnovic. Mid-Hudson was the place of practice of the defendant William Teubl, sued herein as William Teubel, Videnovic's internist for the three years preceding the TIA. On October 13, 2003 Videnovic was seen by Teubl's physician's assistant. At that time, Videnovic was directed to obtain an MRA, to consult with the defendant Jack Goodman, a neurosurgeon, and to return to Mid-Hudson on October 28, 2003. Videnovic complied. On October 22, 2003 an MRA was performed that revealed 60 to 80% stenosis in Videnovic's right internal carotid artery and

90% or greater stenosis in his left internal carotid artery. On October 29, 2003 Videnovic was seen by Teubl, who reviewed the test results and advised Videnovic to continue his care and treatment with Goodman. On November 5, 2003 an angiogram performed at Goodman's request confirmed the results of the earlier tests. Goodman scheduled Videnovic for carotid endarterectomy surgery on November 21, 2003. However, on November 19, 2003, Videnovic suffered a stroke, and on November 22, 2003 he died.

The plaintiff, individually and as executrix of Videnovic's estate, commenced this action against Goodman, Goodman's professional corporation, Teubl, and Mid-Hudson to recover damages, inter alia, for medical malpractice. The gist of the plaintiff's allegations, in the words of her expert, concern "not what was done by these defendants, but rather when it was done." The plaintiff contends that the defendants' treatment of the decedent "from the time of his initial emergency room evaluation to the time of his scheduled surgery was by all logical standards, absurdly lethargic and a clear departure from accepted standards of medical care in these circumstances." In the order appealed from, the Supreme Court awarded summary judgment to each of the defendants dismissing the complaint insofar as asserted against them. We reverse.

Teubl and Mid-Hudson demonstrated their prima facie entitlement to judgment as a matter of law dismissing the complaint insofar as against them by submitting Teubl's affidavit, in which he opined, to a reasonable degree of medical certainty, that the care and treatment rendered to Videnovic by these defendants, including the pace at which it proceeded, did not depart from good and accepted medical practice (*see Wager v Hainline*, 29 AD3d 569 [2006]; *Taylor v Nyack Hosp.*, 18 AD3d 537 [2005]). Teubl opined that it was not a departure from good and accepted medical practice to have deferred Videnovic's further care and treatment to Goodman once the latter began consulting with Videnovic. Consequently, he argued, because Videnovic did not suffer a further stroke and die until some weeks after the deferral to Goodman, nothing either he or Mid-Hudson did or failed to do was a proximate cause of any of the damages alleged.

Goodman demonstrated his prima facie entitlement to judgment as a matter of law dismissing the complaint insofar as against him by submitting his own affidavit, in which he opined, to a reasonable degree of medical certainty, that the care and treatment he rendered to Videnovic, including the pace at which it proceeded, did not depart from good and accepted medical

practice (*see Wager v Hainline,* 29 AD3d 569 [2006]; *Taylor v Nyack Hosp.,* 18 AD3d 537 [2005]). Goodman opined that Videnovic's condition warranted urgent but not emergency care, which Videnovic in fact received.

In opposition, the plaintiff raised a triable issue of fact as to each of the defendants by submitting the affidavit of an expert who opined, to a reasonable degree of medical certainty, that each defendant departed from good and accepted medical practice in their respective care and treatment of Videnovic, and that each of the departures was a proximate cause of the damages alleged (*see Breland v Jamaica Hosp. Med. Ctr.,* 49 AD3d 789 [2008]). For example, the plaintiff's expert opined that, given Videnovic's medical history, which included, inter alia, suffering the TIA despite being on aspirin treatment for cardiac issues, and prior bypass surgery, it was a departure from good and accepted medical practice not to have admitted him to the hospital on an emergency basis after the initial ultrasound examination revealed significant blockage in his carotid arteries. Further, the expert opined that it was an even greater departure to have allowed a two-week delay in obtaining an MRA, and to have failed to admit Videnovic to the hospital for an emergency work-up and surgery once the results of the MRA were revealed. Indeed, he opined, the defendants failed to appreciate "numerous warning flags suggesting that [Videnovic] was a high risk patient for a life-threatening cerebral vascular event," including that both the ultrasound and the MRA revealed not only significant blockage in Videnovic's carotid arteries, but also ulcerated plaque formation, which was indicative of an increased risk of occlusion and embolization. The plaintiff's expert opined, to a reasonable degree of medical certainty, that Videnovic could have been and should have been diagnosed, stabilized on intensive anti-platelet therapy with the addition of oral plavix, and scheduled for a carotid endarterectomy within a week of the TIA, and that it was a departure from good and accepted medical practice not to have done so. Finally, he opined, it was a departure from good and accepted medical practice not to have scheduled surgery until almost two weeks after the last test—an angiogram—performed on November 5, 2003, confirmed the significant blockage of Videnovic's carotid arteries. Thus, the Supreme Court erred in awarding summary judgment to the defendants. Spolzino, J.P., Ritter, Dillon and Dickerson, JJ., concur. [*See* 15 Misc 3d 1129(A), 2007 NY Slip Op 50905(U).]