SADRIYE TEZIR OLGUN, Respondent, v ANTHONY P. CIPOLLA et al., Appellants, et al., Defendants. [920 NYS2d 175]—

On December 6, 2004, the plaintiff's husband, the late Sebahattin Olgun (hereinafter the decedent), visited his primary care physician, the defendant Anthony P. Cipolla, complaining primarily of chest pains that he had experienced two days prior to the visit for two hours and again for a few minutes the day before the visit. The decedent was obese and had a history of increased cholesterol levels, which Dr. Cipolla had addressed with a low cholesterol diet. During the December 6th visit, Dr. Cipolla, who specialized in internal medicine, performed an electrocardiogram (hereinafter EKG) and interpreted it as showing no abnormalities. In order to rule out a cardiac cause for the decedent's chest pain, Dr. Cipolla made an appointment for him at the defendant South Shore Cardiovascular Medicine, P.C. (hereinafter South Shore Cardiovascular), for the following day. On December 7, 2004, the decedent was examined at South Shore Cardiovascular by the defendant Dima Teitelman, who performed an echocardiogram and another EKG. After interpreting both as showing no abnormalities, Dr. Teitelman sent the decedent home. Two days later, on December 9, 2004, the decedent died of a cardiomyopathy with acute cardiac failure.

The plaintiff commenced this action against Dr. Cipolla and Anthony P. Cipolla, M.D., P.C. (hereinafter together the appellants), as well as South Shore Cardiovascular and its physicians, Dima Teitelman, John A. Ruisi, and Raman Kumar, alleging,

inter alia, that the defendants negligently interpreted the EKGs and negligently failed to diagnose and treat the decedent's heart condition. The Supreme Court denied the appellants' motion for summary judgment dismissing the complaint insofar as asserted against them, holding that the conflicting expert opinions established the existence of triable issues of fact. We affirm.

In a medical malpractice action, the requisite elements of proof are "a deviation or departure from accepted practice and evidence that such departure was a proximate cause of injury or damage" (*Hamilton v Good Samaritan Hosp. of Suffern, N.Y.*, 73 AD3d 697, 698 [2010]; *Rebozo v Wilen*, 41 AD3d 457, 458 [2007]; *Thompson v Orner*, 36 AD3d 791, 791-792 [2007]). When moving for summary judgment, "a defendant doctor has the burden of establishing the absence of any departure from good and accepted medical practice or that the plaintiff was not injured thereby" (*Simmons v Brooklyn Hosp. Ctr.*, 74 AD3d 1174, 1178 [2010] [internal quotation marks and citation omitted]; *see Rebozo v Wilen*, 41 AD3d at 458; *Thompson v Orner*, 36 AD3d at 792).

While the appellants' contention that they did not have a duty to diagnose the decedent's heart condition because it was outside Dr. Cipolla's scope of expertise as an internist is without merit, as he involved himself with this aspect of the decedent's care when he performed the EKG (*cf. Wasserman v Staten Is. Radiological Assoc.*, 2 AD3d 713, 714 [2003]; *Yasin v Manhattan Eye, Ear & Throat Hosp.*, 254 AD2d 281, 282-283 [1998]), the appellants met their prima facie burden of establishing their entitlement to judgment as a matter of law by submitting an expert affirmation which demonstrated that the appellants did not depart from good and accepted medical practice in their treatment of the decedent (*see Dandrea v Hertz*, 23 AD3d 332, 332 [2005]; *Ventura v Beth Israel Med. Ctr.*, 297 AD2d 801, 803 [2002]) and that, in any event, any departure would not have been a proximate cause of the decedent's death.

In opposition, however, the affirmation from the plaintiff's expert raised triable issues of fact as to whether the appellants deviated from accepted medical practice and whether such departures were a proximate cause of the decedent's death. Contrary to the appellants' contention, the affirmation from the plaintiff's expert is not so conclusory or unsupported by the facts as to render it insufficient to raise a triable issue of fact (*see Wallenquest v Brookhaven Mem. Hosp. Med. Ctr.*, 28 AD3d 538, 539 [2006]; *cf. Rebozo v Wilen*, 41 AD3d at 459). "Moreover, drawing all reasonable inferences from the affirmation of the plaintiff's expert in the plaintiff's favor, one could reasonably

infer a nexus between the alleged departures from acceptable medical practice and [the decedent's] subsequent death" (*Wallenquest v Brookhaven Mem. Hosp. Med. Ctr.*, 28 AD3d at 539 [citation omitted]). Angiolillo, J.P., Florio, Belen and Miller, JJ., concur.