■ ROBERT J. SEIDEN et al., Respondents, v WILLIAM JEFFREY SONSTEIN, M.D., et al., Appellants, et al., Defendants. [7 NYS3d 565]—

In an action, inter alia, to recover damages for medical malpractice, the defendants William Jeffrey Sonstein, Northern Boulevard Neurological Surgery, P.C., Great Neck Neurological Surgery, P.C., William J. Sonstein, M.D., P.C., and Neurological Surgery, P.C., appeal, as limited by their brief, from so much of

an order of the Supreme Court, Nassau County (McCormack, J.), entered May 6, 2013, as denied those branches of their motion which were for summary judgment dismissing the first and third causes of action insofar as asserted against them, the defendants Richard Shahram Obedian, Island Spine & Sports Medicine, P.C., and Richard S. Obedian, M.D., PLLC, separately appeal from so much of the same order as denied those branches of their motion which were for summary judgment dismissing the first and third causes of action insofar as asserted against them, and the defendant Winthrop-University Hospital Association separately appeals, as limited by its brief, from so much of the same order as denied those branches of its motion which were for summary judgment dismissing the first, third, and fourth causes of action insofar as asserted against it.

Ordered that the order is affirmed insofar as appealed from, with one bill of costs payable by the appellants appearing separately and filing separate briefs.

On November 7, 2007, the plaintiff, Robert J. Seiden (hereinafter Seiden), was admitted to the defendant Winthrop-University Hospital Association (hereinafter Winthrop), on an emergency basis with a diagnosis of lumbar disc disease/herniation with bilateral foot drop. On November 8, 2007, the defendant William Jeffrey Sonstein, a neurologist who was affiliated with the defendants Northern Boulevard Neurological Surgery, P.C., Great Neck Neurological Surgery, P.C., William J. Sonstein, M.D., P.C., and Neurological Surgery, P.C. (hereinafter collectively the Sonstein defendants), and the defendant Richard Shahram Obedian, an orthopedic surgeon who was affiliated with the defendants Island Spine & Sports Medicine, P.C., and Richard S. Obedian, M.D., PLLC (hereinafter collectively the Obedian defendants), performed decompression/fusion surgery on Seiden's L3-L4 lumbar spine vertebrae. On November 9, 2007, due to post-operative complications, Dr. Sonstein performed a surgical evacuation of a hematoma on Seiden's lumbar spine. Thereafter, Seiden developed a cerebrospinal fluid leak at the site of the previous surgeries, and, on November 15, 2007, Dr. Sonstein, assisted by Dr. Obedian, operated again to repair it. During the surgery, to treat the leak, a lumbar catheter was placed directly into Seiden's thecal sac and connected to extension tubing which was brought through the surgical dressing to connect to an exterior drainage system. Sometime during the night of November 18-19, 2007, the lumbar catheter became disconnected from the extension tubing, breaking the closed sterile drainage system. On November 21, 2007, Seiden was diagnosed with nosocomial bacterial meningitis.

In the complaint, Seiden asserted causes of action alleging medical malpractice and lack of informed consent and, against Winthrop, negligence in granting attending privileges and hiring and retaining its employees. Seiden's wife also asserted a cause of action for loss of consortium and services.

Following discovery, the Sonstein defendants, the Obedian defendants, and Winthrop separately moved for summary judgment dismissing the complaint insofar as asserted against each of them. The Supreme Court granted those branches of their motions which were for summary judgment dismissing the second cause of action, alleging lack of informed consent, insofar as asserted against each of them, and otherwise denied their motions.

The Supreme Court properly denied those branches of Winthrop's motion which were for summary judgment dismissing the first, third, and fourth causes of action insofar as asserted against it on the ground that it had failed to make a prima facie showing of entitlement to such relief. "In a medical malpractice action, a defendant moving for summary judgment has the burden of establishing the absence of any departure from good and accepted medical practice, or that the plaintiff was not injured thereby" (*Wall v Flushing Hosp. Med. Ctr.*, 78 AD3d 1043, 1044 [2010] [internal quotation marks omitted]). "In order to sustain this burden, the defendant must address and rebut any specific allegations of malpractice set forth in the plaintiff's bill of particulars" (*id.* at 1045; *see Lormel v Macura*, 113 AD3d 734, 735 [2014]).

In general, under the doctrine of respondeat superior, a hospital may be held vicariously liable for the negligence or malpractice of its employees acting within the scope of employment, but not for negligent treatment provided by an independent physician, as when the physician is retained by the patient himself (*see e.g. Hill v St. Clare's Hosp.*, 67 NY2d 72, 79 [1986]). Thus, "a hospital may not be held liable for injuries suffered by a patient who is under the care of a private attending physician chosen by the patient where the resident physicians and nurses employed by the hospital merely carry out the orders of the private attending physician, unless the hospital staff commits independent acts of negligence or the attending physician's orders are contraindicated by normal practice" (*Fink v DeAngelis*, 117 AD3d 894, 896 [2014] [internal quotation marks omitted]; *see Zhuzhingo v Milligan*, 121 AD3d 1103, 1106 [2014]). A hospital may also be liable on a negligent hiring and/or retention theory to the extent that its employee committed an independent act of negligence outside the scope

of employment, where the hospital was aware of, or reasonably should have foreseen, the employee's propensity to commit such an act (*see Doe v Guthrie Clinic, Ltd.*, 22 NY3d 480, 485 [2014]; *Judith M. v Sisters of Charity Hosp.*, 93 NY2d 932, 933-934 [1999]; *Rodriguez v New York City Tr. Auth.*, 95 AD3d 412, 413 [2012]).

Here, the plaintiffs alleged in their supplemental bill of particulars that Winthrop's nursing staff was independently negligent in that it "allowed [Seiden's] spinal catheter to become and remain an open portal for an infectious process" and "negligently allowed [him] to contract nosocomial meningitis." The expert affirmation Winthrop submitted in its initial moving papers did not specifically address these allegations. Consequently, Winthrop failed to establish, prima facie, that its staff committed no independent act of negligence in the care it rendered to Seiden or that its alleged acts or omissions did not proximately cause Seiden's injuries (*see Lormel v Macura*, 113 AD3d at 735-736; *Wall v Flushing Hosp. Med. Ctr.*, 78 AD3d at 1045). Winthrop did not contend that it could not be liable under the doctrine of respondeat superior or on a negligent hiring/retention theory. Accordingly, Winthrop failed to demonstrate its prima facie entitlement to summary judgment dismissing the first, third, and fourth causes of action insofar as asserted against it, and those branches of its motion which were for such relief were properly denied regardless of the sufficiency of the plaintiffs' opposition papers (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]).

The Supreme Court also properly denied those branches of the Sonstein defendants' motion which were for summary judgment dismissing the first and third causes of action insofar as asserted against them. The Sonstein defendants demonstrated their prima facie entitlement to judgment as a matter of law on these causes of action by submitting an affirmation from an expert neurologist that was sufficient to establish, prima facie, that Dr. Sonstein did not depart from good and accepted medical practice in his treatment of Seiden (*see Trauring v Gendal*, 121 AD3d 1097, 1098 [2014]; *Olgun v Cipolla*, 82 AD3d 1186, 1187 [2011]). However, the expert affidavit submitted by the plaintiffs in opposition was sufficient to raise a triable issue of fact as to whether Dr. Sonstein departed from good and accepted medical practice in his treatment of Seiden. The Supreme Court properly considered the affidavit notwithstanding that it was subscribed and sworn to out of state and not accompanied by a certificate of conformity as required by CPLR 2309 (c), as such a defect is not fatal and no substantial right

of the appellants was prejudiced by disregarding it (*see Todd v Green*, 122 AD3d 831, 832 [2014]; *Midfirst Bank v Agho*, 121 AD3d 343, 351-352 [2014]; *Matos v Salem Truck Leasing*, 105 AD3d 916, 917 [2013]). Contrary to the Sonstein defendants' contention, the opinions asserted by the plaintiffs' expert as to Dr. Sonstein's departures from proper practice were not conclusory or unsupported by the record (*see Gressman v Stephen-Johnson*, 122 AD3d 904, 906 [2014]; *Robinson v Bronx-Lebanon Hosp. Ctr.*, 113 AD3d 545, 546 [2014]; *Olgun v Cipolla*, 82 AD3d at 1187). Contrary to the Sonstein defendants' further contention, in order to defeat summary judgment, the plaintiffs were not required to raise a triable issue of fact as to causation since the Sonstein defendants' expert affirmation did not establish, prima facie, that Dr. Sonstein's alleged deviations did not proximately cause Seiden's claimed injuries (*see Stukas v Streiter*, 83 AD3d 18, 30 [2011]).

Likewise, the Supreme Court properly denied those branches of the Obedian defendants' motion which were for summary judgment dismissing the first and third causes of action insofar as asserted against them. The Obedian defendants demonstrated their prima facie entitlement to judgment as a matter of law on these causes of action by submitting an affirmation from an expert orthopedic surgeon establishing, prima facie, that Dr. Obedian did not depart from good and accepted medical practice in his treatment of Seiden (*see Trauring v Gendal*, 121 AD3d at 1098; *Olgun v Cipolla*, 82 AD3d at 1187). However, the affidavit of the plaintiffs' expert was sufficient to raise a triable issue of fact as to whether Dr. Obedian departed from good and accepted medical practice in his treatment of Seiden. The plaintiffs were not required to demonstrate that Dr. Obedian's alleged departures from proper standards proximately caused Seiden's injuries because the Obedian defendants' expert affirmation did not make a prima facie showing as to that element (*see Stukas v Streiter*, 83 AD3d at 30). Dillon, J.P., Dickerson, Hall and LaSalle, JJ., concur.