[24 NYS3d 689]

Linda Bongiovanni, Respondent, v Scott T. Cavagnuolo, D.C., Appellant.

Second Department, February 3, 2016

**APPEARANCES OF COUNSEL**

*Tromello, McDonnell & Kehoe*, Melville (*James S. Kehoe* of counsel), for appellant.

*Wisell & McGee, LLP*, Kew Gardens (*John T. Wisell* of counsel), for respondent.

**OPINION OF THE COURT**

DILLON, J.P.

The central question we address on this appeal is whether

an expert in one medical or healthcare specialty may proffer an opinion in an action involving a different specialty, if the expert's opinion is related solely to the issue of proximate cause within the expert's own specialty and does not address the defendant's standard of care. We hold that under appropriate circumstances, as here, an objective opinion that is limited to the issue of proximate cause may be rendered by a physician expert and considered by a court in actions involving claims outside of the physician's specialty, where the physician's opinion on proximate cause is derived from within his or her own specialty.

## Facts

On January 13, 2011, the plaintiff sought chiropractic treatment from the defendant, Scott T. Cavagnuolo, D.C., because she was suffering from, inter alia, neck pain, back pain, and recurring headaches. The defendant administered diagnostic tests including X rays, an EMG, and a paraspinal skin temperature study, and then formulated a treatment plan for the plaintiff. Over the next seven months, the plaintiff visited the defendant for treatment 77 times. According to the plaintiff, treatments typically consisted of her lying facedown while the defendant performed adjustments to the thoracic spine, and then, upon turning her over, to the neck. According to the defendant, the treatments typically included three spinal adjustments.

The defendant's progress notes indicate that during an office visit on August 2, 2011, the plaintiff advised him that while jet skiing on vacation she "got bounced around a lot," and was suffering from discomfort, severe neck pain and stiffness, and upper back pain and stiffness. Treatments were administered that day and thereafter on August 3, 4, 9, 10, and 11, 2011.

The plaintiff alleges that during the treatment performed by the defendant on August 10, 2011, he manipulated the thoracic regions of her spine "very forcefully." During the treatment performed on the following day, August 11, 2011, the defendant also allegedly manipulated the plaintiff's neck in a forceful manner. As a result of the treatments administered on those two dates, the plaintiff ceased further office visits with the defendant. She felt pain, nausea, numbness, and tingling, for which she was admitted to Syosset Hospital on August 12, 2011. The plaintiff claims that the defendant's chiropractic treatment caused her to sustain trauma to the C5-C6 disc, for which she underwent a C5-C6 anterior cervical discectomy and fusion with iliac bone graft on October 6, 2011.

The plaintiff commenced this action to recover damages she sustained as a result of the alleged chiropractic malpractice of the defendant during treatments administered on August 10 and 11, 2011. After the completion of discovery and the filing of a note of issue, the defendant moved for summary judgment dismissing the complaint. The moving papers included an affidavit from the defendant wherein he described his evaluation and treatment of the plaintiff and stated that, in his opinion, none of the treatments deviated from the defined and accepted standards of chiropractic care. The motion was also supported by an affirmation from an orthopedic surgeon, Dr. Jeffrey Meyer, who reviewed medical records, hospital records, and various litigation materials, and concluded with a reasonable degree of medical certainty that damage to the plaintiff's C5-C6 disc was not caused by any acts or omissions on the part of the defendant. Rather, in the opinion of Dr. Meyer, the plaintiff's spinal conditions were preexisting and degenerative in nature and were unrelated to the chiropractic treatment provided by the defendant. The defendant also proffered an affirmation of a radiologist, Dr. Scott S. Coyne, who reviewed the plaintiff's radiological films taken both prior to and subsequent to the defendant's treatment of her. Dr. Coyne opined that the plaintiff's thoracic and cervical conditions were "chronic and long-standing, preexistent and causally unrelated" to the alleged incidents of August 10 and 11, 2011.

In opposition, the plaintiff, noting that the affirmations of Dr. Meyer and Dr. Coyne addressed the issue of causation, submitted an affidavit from her own radiologist, Dr. Marc J. Katzman. Dr. Katzman opined, with a reasonable degree of medical certainty, that the central location of the C5-C6 disc herniation, as reflected in an MRI taken on August 15, 2011, was consistent with the exertion of a significant amount of force, and that if the medical history provided to him was accurate, the injury at C5-C6 was caused by the defendant's chiropractic adjustment performed on August 11, 2011.

In reply, the defendant argued that he demonstrated that he did not deviate from the accepted standards of chiropractic practice and thereby established his prima facie entitlement to judgment as a matter of law. The defendant maintained that the plaintiff failed to raise a triable issue of fact in opposition, as the affidavit of Dr. Katzman was limited to an opinion based on radiological studies.

In the order appealed from, the Supreme Court denied the defendant's motion for summary judgment. The Supreme Court

determined that the defendant failed to establish his prima facie entitlement to judgment as a matter of law because the defendant's experts—Dr. Meyer, an orthopedic surgeon, and Dr. Coyne, a radiologist—did not offer a foundation for establishing their familiarity with chiropractic care and treatment.

We affirm the order, but for reasons different from those articulated by the Supreme Court.

<u>Legal Analysis</u>

Medical malpractice actions require proof that the defendant physician deviated or departed from the accepted community standards of practice, and that such deviation or departure was a proximate cause of the plaintiff's injuries (*see Gross v Friedman*, 73 NY2d 721, 722-723 [1988]; *Stukas v Streiter*, 83 AD3d 18, 23 [2011]; *Heller v Weinberg*, 77 AD3d 622 [2010]; *Myers v Ferrara*, 56 AD3d 78, 83 [2008]; *Musiaro v Clarkstown Med. Assoc.*, 2 AD3d 698 [2003]). So, too, chiropractic malpractice actions require proof that the defendant chiropractor deviated or departed from the accepted community standards of chiropractic practice, and that such deviation or departure was a proximate cause of the plaintiff's injuries (*see Colao v St. Vincent's Med. Ctr.*, 65 AD3d 660, 661 [2009]).

This Court has explained that when a defendant moves for summary judgment in such cases, the defendant may argue that there was no departure from good and acceptable medical practice, or that the defendant's conduct did not proximately cause the alleged injuries (*see Seiden v Sonstein*, 127 AD3d 1158, 1160 [2015]; *Carioscia v Welischar*, 124 AD3d 816, 817 [2015]; *Faicco v Golub*, 91 AD3d 817, 818 [2012]; *Stukas v Streiter*, 83 AD3d at 24; *Deutsch v Chaglassian*, 71 AD3d 718, 719 [2010]; *Flanagan v Catskill Regional Med. Ctr.*, 65 AD3d 563, 565 [2009]; *Rebozo v Wilen*, 41 AD3d 457, 458 [2007]). Nothing would prevent a defendant from arguing, in the alternative, that both elements of medical malpractice are lacking. The moving defendant bears the initial burden of tendering evidence in admissible form establishing a prima facie entitlement to judgment as a matter of law (*see Friends of Animals v Associated Fur Mfrs.*, 46 NY2d 1065, 1067-1068 [1979]; *Mayzel v Moretti*, 105 AD3d 816, 817-818 [2013]). The prima facie burden is met only where the defendant addresses and rebuts any specific allegations of malpractice set forth in the plaintiff's bill of particulars (*see Seiden v Sonstein*, 127 AD3d at 1160; *Reiss v Sayegh*, 123 AD3d 787, 788 [2014]; *Lormel v Macura*, 113

AD3d 734, 735 [2014]; *Wall v Flushing Hosp. Med. Ctr.*, 78 AD3d 1043, 1045 [2010]; *Terranova v Finklea*, 45 AD3d 572 [2007]). The burden is not met if the defendant's expert renders an opinion that is conclusory in nature or unsupported by competent evidence (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *Barlev v Bethpage Physical Therapy Assoc., P.C.*, 122 AD3d 784 [2014]; *Duvidovich v George*, 122 AD3d 666 [2014]; *Yaegel v Ciuffo*, 95 AD3d 1110, 1112 [2012]; *DiMitri v Monsouri*, 302 AD2d 420, 421 [2003]; *Couch v County of Suffolk*, 296 AD2d 194, 198 [2002]). A defendant's failure to satisfy the prima facie burden requires the denial of the motion regardless of the sufficiency of the opposition papers (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]; *Iulo v Staten Is. Univ. Hosp.*, 106 AD3d 696, 697 [2013]; *Perre v Vassar Bros. Hosp.*, 52 AD3d 670 [2008]).

Only if the defendant meets the prima facie burden of proof as to the lack of a deviation from the standard of care or the absence of proximate cause, or both, does the burden shift to the plaintiff to raise a triable issue of fact in opposition (*see Indig v Finkelstein*, 23 NY2d 728, 729 [1968]; *Abakpa v Martin*, 132 AD3d 924 [2015]; *Iulo v Staten Is. Univ. Hosp.*, 106 AD3d at 697; *Farrell v Herzog*, 123 AD3d 655, 657 [2014]; *Gillespie v New York Hosp. Queens*, 96 AD3d 901, 902 [2012]; *Savage v Quinn*, 91 AD3d 748, 749 [2012]). As discussed in *Stukas v Streiter*, "there is no good reason to require the opposing party to rebut or address any element or theory other than that raised by the moving party" (*Stukas v Streiter*, 83 AD3d at 26). The plaintiff's proof in opposition to a summary judgment motion must be in a form admissible at trial (*see Alvarez v Prospect Hosp.*, 68 NY2d at 324; *Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]; *Sheridan v Bieniewicz*, 7 AD3d 508, 509 [2004]; *DiMitri v Monsouri*, 302 AD2d at 420-421; *Menzel v Plotnick*, 202 AD2d 558, 559 [1994]).

A. Proximate Cause

Here, on the issue of proximate cause, the defendant proffered the affirmations of a board-certified orthopedic surgeon, Dr. Meyer, and a board-certified radiologist, Dr. Coyne, who both opined, based upon their review of various materials, that the plaintiff's injuries were not proximately caused by the chiropractic treatment, as the plaintiff was suffering from preexisting degenerative changes to the cervical and thoracic regions of her spine. The Supreme Court held that these opinions could not be considered as prima facie proof because

neither physician established his familiarity with the standard of chiropractic care and treatment. We disagree with the Supreme Court's reasoning on this point.

Physicians offering opinions in medical, dental, podiatric, chiropractic, or other specialty malpractice actions must establish their credentials in order for their expert opinions to be considered by courts. They do so by being specialists in the field that is the subject of the action, or if not specialists in the same field, then by possessing the requisite skill, training, education, knowledge, or experience from which it can be assumed that the opinion rendered is reliable (see Tsimbler v Fell, 123 AD3d 1009 [2014]; Mustello v Berg, 44 AD3d 1018, 1019 [2007]; Behar v Coren, 21 AD3d 1045, 1046-1047 [2005]; Postlethwaite v United Health Servs. Hosps., 5 AD3d 892, 895 [2004]). Thus, when a physician offers an expert opinion outside of his or her specialization, a foundation must be laid tending to support the reliability of the opinion rendered (see Tsimbler v Fell, 123 AD3d at 1009; Bey v Neuman, 100 AD3d 581, 582 [2012]; Shectman v Wilson, 68 AD3d 848, 850 [2009]; Geffner v North Shore Univ. Hosp., 57 AD3d 839, 842 [2008]; Bjorke v Rubenstein, 53 AD3d 519, 520 [2008]; Glazer v Choong-Hee Lee, 51 AD3d 970, 971 [2008]; Mustello v Berg, 44 AD3d at 1019).

■ Here, the opinions of Dr. Meyer and Dr. Coyne would not be admissible on the issue of the defendant's alleged deviation or departure from the standard of chiropractic care, as neither physician indicated any familiarity with the standards of chiropractic practice. However, the opinions of Dr. Meyer and Dr. Coyne were not proffered to address the issue of whether the defendant deviated or departed from the relevant chiropractic standard of care. Rather, the affirmations of both physicians were clearly and narrowly drawn to address only the separate element of proximate cause. Dr. Meyer's opinion that the defendant's described treatments were not a proximate cause of the alleged injuries is premised upon his expertise as an orthopedic surgeon, and concerns matters about which orthopedists and orthopedic surgeons may permissibly testify and render opinions. Specifically, Dr. Meyer was qualified to express an opinion that the injuries to the plaintiff's C5-C6 disc were preexisting and degenerative and, therefore, not caused by the chiropractic treatments. Where, as here, the opinion as to proximate cause is based upon matters within the expert's specialty, there is no requirement that the expert additionally

possess expertise on the distinct element of the standard of care. In other words, proximate cause is proximate cause, and there is not necessarily a distinction between chiropractic proximate cause requiring opinion from a chiropractic expert versus opinion from an orthopedist on the same issue.

Similarly, the defendant's radiologist, Dr. Coyne, was foundationally qualified to render his opinion that the defendant's chiropractic treatment was not a proximate cause of the alleged injuries, as his opinion was based upon a review of radiologic films reflecting preexisting degenerative changes within the expertise of a radiologist to diagnose.

Accordingly, while Dr. Meyer and Dr. Coyne did not establish that they were qualified to offer an opinion on the issue of the defendant's alleged deviation or departure from the standard of chiropractic practice, their opinions should have been considered by the Supreme Court on the issue of whether the plaintiff's alleged injuries preexisted her chiropractic treatments and were therefore not proximately caused by the acts or omissions of the defendant.

Therefore, contrary to the Supreme Court's conclusion, the defendant met his prima facie burden of proving the absence of proximate cause, and the burden should have shifted to the plaintiff to raise a triable issue of fact as to that point.

In opposition, on the limited issue of proximate cause, the plaintiff submitted the affirmation of Dr. Marc J. Katzman, a board-certified radiologist. Dr. Katzman opined that the central location of a C5-C6 herniation depicted in an MRI taken August 15, 2011, was "unusual as the central fibers of the posterior longitudinal ligament are strongest centrally," which denoted to him "that a significant amount of force was involved in causing the centrally located herniation." Moreover, according to Dr. Katzman, a high signal intensity on T2-weighted imaging within the extruded disc material denoted that the herniation there is recent, since the herniated nucleus pulposus appeared to be "fresh" and hydrated. Dr. Katzman's opinion is arguably consistent with the plaintiff's deposition testimony that the defendant manipulated her spine and neck "very forcefully" during treatments rendered August 10 and 11, 2011. As such, the plaintiff succeeded in raising a triable issue of fact as to the issue of proximate cause.

B. Deviation from Standard of Care

■ Aside from proximate causality, the defendant proffered his own affidavit in support of summary judgment by render-

ing an opinion, as his own expert, that he did not deviate or depart from the relevant standard of chiropractic care. Indeed, a defendant healthcare practitioner's own affidavit may be used to establish his or her prima facie entitlement to summary judgment (*see Swezey v Montague Rehab & Pain Mgt., P.C.*, 59 AD3d 431, 433 [2009]; *Videnovic v Goodman*, 54 AD3d 937, 939-940 [2008]; *Wager v Hainline*, 29 AD3d 569, 570 [2006]), even if it is self-serving (*see Colao v St. Vincent's Med. Ctr.*, 65 AD3d at 661; *Mackey v Sangani*, 238 AD2d 919, 920 [1997]). We nevertheless find the defendant's affidavit attesting that he did not deviate or depart from the appropriate standards of chiropractic treatment to be conclusory and insufficient to establish his prima facie entitlement to judgment as a matter of law on this element, as the defendant failed to define for the court the very standards that he claims were not violated (*see Raucci v Shinbrot*, 127 AD3d 839, 843 [2015]; *Capobianco v Marchese*, 125 AD3d 914, 916 [2015]; *Walker v Saint Vincent Catholic Med. Ctrs.*, 114 AD3d 669, 671 [2014]). Consequently, we need not consider the plaintiff's opposition papers on this issue (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d at 853; *Iulo v Staten Is. Univ. Hosp.*, 106 AD3d at 697; *Perre v Vassar Bros. Hosp.*, 52 AD3d at 670).

The parties' remaining contentions either are without merit or have been rendered academic in light of our determination.

LEVENTHAL, CHAMBERS and ROMAN, JJ., concur.

Ordered that the order is affirmed, with costs.