Pezulich v Grecco (2022 NY Slip Op 03912)

Pezulich v Grecco

2022 NY Slip Op 03912

Decided on June 15, 2022

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 15, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

COLLEEN D. DUFFY, J.P.
JOSEPH J. MALTESE
LINDA CHRISTOPHER
WILLIAM G. FORD, JJ.

2020-03209
 (Index No. 707572/17)

[*1]Paul Pezulich, etc., appellant, 
v
Michael A. Grecco, etc., et al., defendants, Richmond University Medical Center, respondent.

Jon L. Norinsberg, Esq., PLLC (Mischel & Horn, P.C., New York, NY [Scott T. Horn and Lauren E. Bryant], of counsel), for appellant.
Vigorito, Barker, Patterson, Nichols and Porter, LLP, Valhalla, NY (Leilani J. Rodriguez of counsel), for respondent.

DECISION & ORDER
In an action, inter alia, to recover damages for medical malpractice, etc., the plaintiff appeals from an order of the Supreme Court, Queens County (Peter J. O'Donoghue, J.), entered February 14, 2020. The order granted the motion of the defendant Richmond University Medical Center for summary judgment dismissing the amended complaint insofar as asserted against it.
ORDERED that the order is reversed, on the law, with costs, and the motion of the defendant Richmond University Medical Center for summary judgment dismissing the amended complaint insofar as asserted against it is denied.
The plaintiff's decedent gave birth at the defendant Richmond University Medical Center (hereinafter RUMC) on January 10, 2015. The decedent's private attending physician, the defendant Michael A. Grecco, treated the decedent. During a prenatal visit on January 6, 2015, Grecco noted that the decedent had a cervical myoma, which he estimated to be four to five centimeters in size. He planned for the decedent to deliver the baby vaginally, and he planned to remove the myoma four to six weeks after delivery. Although the decedent went into labor spontaneously and attempted a vaginal delivery, the baby's descent was arrested due to the obstructing cervical myoma, making a cesarean section necessary. Two RUMC residents and an anesthesiologist were present for the delivery. The plaintiff, the decedent's husband, testified at his deposition that he also was in the delivery room. The plaintiff testified that two to three weeks before the delivery, Grecco had described the myoma as being the size of a grape, but in the delivery room Grecco described it as the size of a "goddamn grapefruit" and said that he had "never experienced a fibroid growing so large so fast, except from a woman's metabolism."
The decedent and her baby were discharged from RUMC on January 13, 2015. On March 31, 2015, Grecco ordered a CT scan and biopsy and performed a Pap smear. The biopsy was performed on April 7, 2015, approximately 12 weeks after the decedent gave birth, and the results of the biopsy revealed cervical cancer. The decedent began treatment at Memorial Sloan Kettering Cancer Center, and she died on December 7, 2015.
The plaintiff, as the administrator of the decedent's estate and individually, commenced this action, inter alia, to recover damages for medical malpractice and wrongful death against Grecco and his practice, the defendant OB/GYN Associates of Staten Island, P.C., and RUMC. The plaintiff alleged in his bill of particulars, among other things, that RUMC was negligent in failing to timely refer the decedent to a gynecologic oncologist. RUMC moved for summary judgment dismissing the amended complaint insofar as asserted against it. In an order entered February 14, 2020, the Supreme Court granted RUMC's motion, and the plaintiff appeals.
"In order to establish the liability of a physician for medical malpractice, a plaintiff must prove that the physician deviated or departed from accepted community standards of practice, and that such departure was a proximate cause of the plaintiff's injuries" (Stukas v Streiter, 83 AD3d 18, 23; see Hutchinson v New York City Health & Hosps. Corp., 172 AD3d 1037, 1039). In moving for summary judgment, a physician defendant must establish, prima facie, "either that there was no departure or that any departure was not a proximate cause of the plaintiff's injuries" (Lesniak v Stockholm Obstetrics & Gynecological Servs., P.C., 132 AD3d 959, 960). Once a defendant has made such a showing, the burden shifts to the plaintiff to submit evidentiary facts or materials to rebut the defendant's prima facie showing (see Stukas v Streiter, 83 AD3d at 30).
As a general matter, "under the doctrine of respondeat superior, a hospital may be held vicariously liable for the negligence or malpractice of its employees acting within the scope of employment, but not for negligent treatment provided by an independent physician, as when the physician is retained by the patient" (Seiden v Sonstein, 127 AD3d 1158, 1160). Where hospital staff, such as resident physicians and nurses, have participated in the treatment of the patient, the hospital may not be held vicariously liable for resulting injuries where the hospital employees merely carried out the private attending physician's orders (see Doria v Benisch, 130 AD3d 777, 777). These rules shielding a hospital from liability do not apply when (1) "the staff follows orders despite knowing 'that the doctor's orders are so clearly contraindicated by normal practice that ordinary prudence requires inquiry into the correctness of the orders'" (id. at 778, quoting Toth v Community Hosp. at Glen Cove, 22 NY2d 255, 265 n 3); (2) the hospital's employees have committed independent acts of negligence (see Doria v Benisch, 130 AD3d at 778); or (3) the words or conduct of the hospital give rise to the appearance and belief that the physician possesses the authority to act on behalf of the hospital (see Sampson v Contillo, 55 AD3d 588, 590).
"Summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions" (Feinberg v Feit, 23 AD3d 517, 519), since "[s]uch conflicting expert opinions will raise credibility issues which can only be resolved by a jury" (DiGeronimo v Fuchs, 101 AD3d 933, 936).
Here, RUMC made a prima facie showing of its entitlement to judgment as a matter of law by submitting, inter alia, an affirmation of its expert, who opined within a reasonable degree of medical certainty that RUMC did not depart from the accepted standard of care and that, in any event, any alleged departures were not a proximate cause of the decedent's injuries (see Wagner v Parker, 172 AD3d 954, 955; Lowe v Japal, 170 AD3d 701, 703). RUMC's expert further opined that RUMC's employees acted under the supervision and control of Grecco, a private attending physician, that Grecco's orders were not contraindicated, and that RUMC did not commit any independent acts of negligence (see Doria v Benisch, 130 AD3d at 778).
In opposition to RUMC's prima facie showing, however, the plaintiff raised triable issues of fact by submitting an affirmation of an expert who was board certified by the American Board of Obstetrics and Gynecology. The plaintiff's expert opined that RUMC and its staff departed from good and accepted medical practice by, inter alia, failing to obtain the decedent's entire medical chart, which indicated that she had certain risk factors for cervical cancer, failing to palpate the lesion on the decedent's cervix during a required cervical exam on admission to the hospital, and failing to order a gynecological oncology consult upon discovering the obstruction that prevented the decedent from delivering her baby vaginally. The plaintiff's expert further opined that "[w]hen treating cervical cancer, time is of the essence" and, thus, the delay in diagnosing the decedent's cervical cancer contributed to her death. Thus, the plaintiff's expert raised triable issues of fact as [*2]to whether Grecco's plan to wait until four to six weeks after delivery to perform a biopsy was so clearly contraindicated by normal practice that ordinary prudence required RUMC's staff to inquire into the correctness of that plan. In particular, the plaintiff raised triable issues of fact as to whether RUMC's resident physician should have inquired into the correctness of the plan and referred the decedent for an oncology consult, in light of the evidence that the resident physician was aware that the decedent needed a cesarean section because of the size of the obstruction and was present in the delivery room, where Grecco exclaimed that the myoma had grown to the size of a "goddamn grapefruit" and said that he had "never experienced a fibroid growing so large so fast, except from a woman's metabolism."
"'While it is true that a medical expert need not be a specialist in a particular field in order to testify regarding accepted practices in that field . . . the witness nonetheless should be possessed of the requisite skill, training, education, knowledge or experience from which it can be assumed that the opinion rendered is reliable'" (Behar v Coren, 21 AD3d 1045, 1046-1047, quoting Postlethwaite v United Health Servs. Hosps., 5 AD3d 892, 895). Here, contrary to the Supreme Court's determination, the affirmation of the plaintiff's expert, who was board certified by the American Board of Obstetrics and Gynecology, established that the expert was possessed of the requisite skill, training, education, knowledge, or experience to opine on whether the delay in diagnosing the decedent's cervical cancer proximately caused her death (cf. Noble v Kingsbrook Jewish Med. Ctr., 168 AD3d 1077, 1079; Galluccio v Grossman, 161 AD3d 1049, 1051-1052; Lavi v NYU Hosps. Ctr., 133 AD3d 830, 831; Shectman v Wilson, 68 AD3d 848, 849).
Accordingly, the Supreme Court should have denied RUMC's motion for summary judgment dismissing the amended complaint insofar as asserted against it.
DUFFY, J.P., MALTESE, CHRISTOPHER and FORD, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court