■ WESTIN MALCOLM, Respondent, v THE MOUNT VERNON HOSPITAL, Appellant, et al., Defendants. [766 NYS2d 185] —Order, Supreme Court, Bronx County (Kenneth Thompson, J.), entered on or about January 15, 2002, which, in a medical malpractice action, denied defendant-appellant hospital's motion for summary judgment dismissing the complaint against it, affirmed, without costs.

On January 12, 1997, plaintiff went to his primary physician, Dr. Edwards, complaining that for two weeks he had a persistent cough, chills, shortness of breath and difficulty breathing when he was lying down. Dr. Edwards instructed plaintiff to go to the emergency room of The Mount Vernon Hospital (the Hospital), where, on January 13, 1997, he received a chest x-ray and was admitted for pneumonia. Plaintiff remained in the Hospital and was given an echocardiogram on January 15. Dr. Edwards thereafter sought a

cardiac consultation with Dr. Lee. At his deposition, Dr. Edwards testified that he had consulted with Dr. Lee, a cardiologist "on staff" at the Hospital, on a number of prior occasions, and that he had asked the house staff to page Dr. Lee to see plaintiff.

Dr. Lee is an attending physician at the Hospital who teaches residents in the intensive care unit (ICU), and holds a clinic at the Hospital four or five times a year. He saw plaintiff on January 20, 1997, in the ICU of the Hospital and performed a physical evaluation of him. Dr. Lee reviewed the chest x-ray and echocardiogram, and concluded that plaintiff suffered from dilated congestive cardiomyopathy. He prescribed a variety of medications for plaintiff, which did not include anticoagulation therapy, and he saw plaintiff for follow-up on January 21, 24, 25, 26 and 27. All of these visits took place in the ICU.

On January 24, plaintiff suffered a stroke. A neurologist consulted by Dr. Edwards opined that a stroke in a 46-year-old man without high blood pressure and with cardiomyopathy was most likely caused by a blood clot breaking off in the heart.

Plaintiff brought this action against Dr. Edwards, Dr. Lee and the Hospital, asserting that the stroke and the resulting neurologic deficits arose from defendants' failure to administer anticoagulants when his cardiomyopathy was first detected. As relevant to this appeal, the Hospital moved for summary judgment, arguing that plaintiff was given appropriate care, and that, in any event, it could not be held vicariously liable, because plaintiff was a private patient of Dr. Edwards, and Dr. Lee was a private consultant, not employed by the Hospital. Plaintiff opposed the motion, arguing that Dr. Lee's failure to recommend anticoagulants at the time of his consultation constituted negligence for which the Hospital could be liable, and that the question of whether the Hospital was responsible for Dr. Lee's alleged negligence was for the jury. The court denied the Hospital's motion. This appeal ensued.

A hospital is not exempt from liability for the negligence of physicians utilizing its facilities to practice medicine based upon the particular doctor's status as a private attending physician, or an independent contractor (*Mduba v Benedictine Hosp.*, 52 AD2d 450 [1976]). Instead, "a hospital may be held vicariously liable, based on the principle of agency by estoppel, for the acts of an independent physician where the physician was provided by the hospital or was otherwise acting on the hospital's behalf, and the patient reasonably believed that the physician was acting at the hospital's behest (*Soltis v State of New York*, 172 AD2d 919)" (*Sarivola v Brookdale Hosp. & Med.*

*Ctr.*, 204 AD2d 245, 245-246 [1994], *lv denied* 85 NY2d 805 [1995]).

As the proponent of a motion for summary judgment, the Hospital had the burden of proving, as a matter of law, that it is not vicariously liable for the defendant doctor's alleged acts of negligence. To do this, it must come forward with sufficient evidence to demonstrate the absence of any material issues of fact as to whether or not Dr. Lee was acting as its agent. Because the Hospital did not meet this burden, summary judgment was properly denied (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *Delprete v Victory Mem. Hosp.*, 191 AD2d 673 [1993]; *Augeri v Massoff*, 134 AD2d 307 [1987]).

The record before the motion court was insufficient to make a conclusive determination that the defendant Hospital was not responsible for any alleged negligence by Dr. Lee. Although Dr. Lee was not a Hospital employee, Dr. Edwards chose Dr. Lee from a number of cardiologists "on staff" at the Hospital who are available for consultations. Dr. Lee had a number of other teaching and clinical responsibilities at the Hospital, and he was called to assist with plaintiff's care in the ICU in response to a page by Hospital employees. Collectively, these facts preclude our conclusion, as a matter of law, at this stage in the proceedings, that Dr. Lee was not "provided by the hospital or was otherwise acting on the hospital's behalf" (*Sarivola, supra* at 245-246; *compare Klippel v Rubinstein*, 300 AD2d 448 [2002], *lv denied* 100 NY2d 508 [2003] [where, after trial on the merits, plaintiff failed to proffer any evidence regarding the nature of the relationship between various treating doctors and the defendant hospital, vicarious liability charge deemed unwarranted]).

In addition, the Hospital has not shown that plaintiff could not have "reasonably believed that [Dr. Lee] was acting at the hospital's behest" (*Sarivola, supra* at 246). All of the attendant circumstances of the particular case are relevant to making this determination (*Augeri v Massoff*, 134 AD2d 308 [1987]). While the dissent attempts to distinguish the facts of this case and the treatment provided to the plaintiff in *Soltis (supra)*, it remains that here, as in *Soltis*, the physicians conducted their treatment while the plaintiff patients were admitted to the relevant medical facilities. In addition, there was no evidence in either case that the patient requested a particular doctor, had any prior relationship with that physician and or was aware of the particular nature of the doctor's affiliation with the medical facility. Concur—Mazzarelli, J.P., Ellerin and Lerner, JJ.

Williams and Gonzalez, JJ., dissent in a memorandum by

Gonzalez, J., as follows: Contrary to the majority's holding, I believe that plaintiff has failed to raise a triable issue of fact on the issue of whether the defendant hospital may be held vicariously liable for the alleged negligence of the defendant cardiologist. Therefore, I respectfully dissent.

"When treatment is rendered by a private attending physician, not in the employ of a hospital, the general rule is that the hospital is not liable for acts of malpractice which are committed in carrying out the independent physician's orders (*Toth v Community Hosp.*, 22 NY2d 255, 265; *Fiorentino v Wenger*, 19 NY2d 407, 415)" (*Sarivola v Brookdale Hosp. & Med. Ctr.*, 204 AD2d 245, 245 [1994], *lv denied* 85 NY2d 805 [1995]). "However, a hospital may be held vicariously liable, based on the principle of agency by estoppel, for the acts of an independent physician where the physician was provided by the hospital or was otherwise acting on the hospital's behalf, *and* the patient reasonably believed that the physician was acting at the hospital's behest (*Soltis v State of New York*, 172 AD2d 919)" (*Sarivola v Brookdale Hosp. & Med. Ctr.*, 204 AD2d at 245-246 [emphasis added]).

Plaintiff has failed to submit evidence to raise a triable issue as to either of these two elements, both of which must be proven for vicarious liability (*Sarivola v Brookdale Hosp. & Med. Ctr.*, 204 AD2d at 245-246; *Soltis v State of New York*, 172 AD2d at 919-920). The evidence shows that the cardiologist was not employed or paid by the hospital and he did not treat plaintiff at the hospital's request. Nor is there any evidence that the hospital exercised any control over the treatment rendered by him (*cf. Mduba v Benedictine Hosp.*, 52 AD2d 450, 452-453 [1976]).

Moreover, although plaintiff entered the hospital via the emergency room, he did so in response to the instructions of his private attending physician. Thus, this is not a case "where a patient enters the hospital through the emergency room and seeks treatment from the hospital, not from a particular physician" (*Shafran v St. Vincent's Hosp. & Med. Ctr.*, 264 AD2d 553, 558 [1999]; *cf. Klippel v Rubinstein*, 300 AD2d 448, 449 [2002], *lv denied* 100 NY2d 508 [2003] [vicarious liability charge not warranted where decedent admitted to hospital under the care of her private doctor for routine labor and delivery]). Instead, the record shows that the cardiologist performed a "consult" at the request of plaintiff's private physician, not the hospital. Contrary to the majority's argument, the characterization that the cardiologist was "on staff" at the hospital is irrelevant given the absence of any actual proof that

he was in fact acting on behalf of the hospital in rendering treatment to plaintiff (see Klippel v Rubinstein, 300 AD2d at 449).

Nor is there any evidence offered by plaintiff to raise a triable issue of fact on the question of whether the plaintiff reasonably believed that the cardiologist was acting at the hospital's behest. Soltis v State of New York (172 AD2d 919 [1991]), cited by the majority, is distinguishable. In that case, involving an inmate who received medical treatment by an independent doctor who performed consults on inmates, there were several factors suggesting that the doctor was working at the behest of the State. Such facts include that the claimant was initially examined at the correctional facility by a physician's assistant employed by the State, that the assistant arranged for the subsequent consultation by the private doctor, that the claimant signed a Department of Correctional Services consent form and that the surgery was also performed at the state facility (id.). This was ample evidence to suggest involvement by the State and for the claimant to reasonably believe that those providing treatment were acting on behalf of the State.

No similar factors are present here, where plaintiff's treatment was initiated and controlled by his private attending physician. Moreover, to the extent the majority's opinion suggests that a plaintiff's subjective belief that a doctor is working on behalf of the hospital, by itself, is sufficient to hold the hospital vicariously liable, I respectfully disagree (see Sarivola v Brookdale Hosp. & Med. Ctr., 204 AD2d at 245-246). Accordingly, I would reverse the order denying the hospital's motion to dismiss.