■ MATEO LOAIZA et al., Appellants, v HENRY LAM, Defendant, and FLUSHING HOSPITAL MEDICAL CENTER, Respondent. [968 NYS2d 548]—

In an action, inter alia, to recover damages for medical malpractice, the plaintiffs appeal, as limited by their brief, from so much of an order of the Supreme Court, Queens County (O'Donoghue, J.), entered July 27, 2011, as granted that branch of the motion of the defendant Flushing Hospital Medical Center which was for summary judgment dismissing the cause of action to recover damages for medical malpractice insofar as asserted against it.

Ordered that the order is reversed insofar as appealed from, on the law, with costs, and that branch of the motion of the defendant Flushing Hospital Medical Center which was for summary judgment dismissing the cause of action to recover damages for medical malpractice insofar as asserted against it is denied.

The plaintiff Claudia M. Loaiza (hereinafter Loaiza) gave birth to the infant plaintiff at the defendant Flushing Hospital Medical Center (hereinafter FHMC). The defendant Henry Lam was the attending physician who delivered the infant plaintiff. Loaiza requested to have a vaginal delivery, despite allegedly being advised by Lam and two other physicians to have a cesarean section due to her weight, the estimated fetal weight of the infant plaintiff, and a prior shoulder dystocia during the birth of her older son. When a shoulder dystocia was in fact encountered during the delivery of the infant plaintiff, Lam completed a series of obstetrical maneuvers to dislodge the infant plaintiff's shoulder, resulting in his delivery. The infant plaintiff suffers from Erb's palsy, allegedly as a result of medical malpractice committed during his delivery.

The Supreme Court erred in granting that branch of FHMC's motion which was for summary judgment dismissing the medical malpractice cause of action insofar as asserted against it. FHMC established its prima facie entitlement to judgment as a matter of law by showing that while Lam worked solely at FHMC, he was not an employee of FHMC. He was employed by a different entity, TJH Medical Services, P.C. However, in opposition, the plaintiffs raised triable issues of fact as to whether FHMC may be vicariously liable for Lam's alleged malpractice under a theory of apparent or ostensible agency (*see Sampson v Contillo*, 55 AD3d 588, 590-591 [2008]; *Dragotta v Southampton Hosp.*, 39 AD3d 697, 698 [2007]). "A hospital [is] responsible to a patient who sought medical care at the hospital, . . . rather than from any particular physician although the physician whose malpractice caused injury to the patient was not an employee of the hospital" (*Hill v St. Clare's Hosp.*, 67 NY2d 72, 80-81 [1986]; *see Keitel v Kurtz*, 54 AD3d 387, 390 [2008]; *Christopherson v Queens-Long Is. Med. Group, P.C.*, 17 AD3d 393 [2005]). To create an apparent or ostensible agency, the plaintiff must reasonably rely on the appearance of authority, based on some misleading words or conduct by the principal, not the agent. Moreover, the plaintiff must accept the services of the agent in reliance upon the perceived relationship between the agent and the principal, and not on reliance on the agent's skill (*see Sullivan v Sirop*, 74 AD3d 1326, 1328 [2010]; *Sampson v Contillo*, 55 AD3d at 590). In the context of a medical malpractice action, the patient must have reasonably believed that the physicians treating her were provided by the hospital or acted on the hospital's behalf (*see Sampson v Contillo*, 55 AD3d at 590; *Dragotta v Southampton Hosp.*, 39 AD3d at 698-699). In evaluating whether a doctor is the apparent agent of a hospital, a court should consider all attendant circumstances to determine

whether the patient could properly have believed that the physician was provided by the hospital (see *Sampson v Contillo*, 55 AD3d at 590; *Contu v Albert*, 18 AD3d 692 [2005]; *Augeri v Massoff*, 134 AD2d 308 [1987]).

Here, the record shows that Loaiza did not have a private obstetrician. She came to FHMC for her prenatal treatment, and was seen by a different doctor on each visit. When she arrived at FHMC on December 11, 2007, in labor, she was seeking care from the hospital rather than from any particular physician. She did not even know who Lam was. She was not referred to FHMC or advised or directed to go there by Lam, and did not request to be treated by him (see *Finnin v St. Barnabas Hosp.*, 306 AD2d 189 [2003]; *cf. Gardner v Brookdale Hosp. Med. Ctr.*, 73 AD3d 1124 [2010]; *Schultz v Shreedhar*, 66 AD3d 666 [2009]; *Christopherson v Queens-Long Is. Med. Group, P.C.*, 17 AD3d 393 [2005]). FHMC residents called Lam. Lam was assigned by FHMC as Loaiza's attending physician (see *Keitel v Kurtz*, 54 AD3d at 390-391). Under these circumstances, Loaiza could properly have believed that Lam was provided by FHMC. In her affidavit, Loaiza averred that as far as she understood, the doctors who examined her and delivered the infant plaintiff were assigned to her and were employed by the hospital. Triable issues of fact exist as to whether FHMC can be held vicariously liable, under a theory of apparent or ostensible agency, for malpractice, if any, committed by Lam.

Furthermore, while FHMC established, prima facie, through the affirmation of its expert, Dr. Barry Kramer, that neither Lam nor Dr. Anghel, the resident who examined Loaiza upon her presentation to labor and delivery, committed malpractice, the plaintiffs raised triable issues of fact through their expert affirmations as to whether Lam or Anghel departed from good and accepted standards of medical practice, and, if so, whether such departure proximately caused the infant plaintiff's injuries (see *Stukas v Streiter*, 83 AD3d 18 [2011]; *Ortaglia v Scanlon*, 35 AD3d 421 [2006]; *Calabro v Hescheles*, 22 AD3d 622 [2005]). Where parties to a medical malpractice action offer conflicting expert opinions, issues of credibility arise requiring jury resolution (see *Martin v Siegenfeld*, 70 AD3d 786 [2010]; *Dandrea v Hertz*, 23 AD3d 332 [2005]; *Shields v Baktidy*, 11 AD3d 671 [2004]). The opinions of the plaintiffs' experts conflicted with the opinion of FHMC's expert on issues such as whether improper force was placed on the infant plaintiff by Lam during delivery, and whether a cesarean section should have been performed (see *Martin v Siegenfeld*, 70 AD3d 786 [2010]). Accordingly, the Supreme Court should have denied that branch of

FHMC's motion which was for summary judgment dismissing the cause of action to recover damages for medical malpractice insofar as asserted against it. Mastro, J.P., Hall, Sgroi and Cohen, JJ., concur.