■ NATAN NISANOV, as Administrator of the Estate of ESTHER NISANOV, Deceased, Respondent, v NEEKIANUND KHULPATEEA, M.D., Appellant, et al., Defendant. [27 NYS3d 663]—

In an action to recover damages for medical malpractice, lack of informed consent, and wrongful death, etc., the defendant Neekianund Khulpateea appeals, as limited by his brief, from so much of an order of the Supreme Court, Kings County (Bunyan, J.), dated January 10, 2014, as denied his motion for summary judgment dismissing the amended complaint insofar as asserted against him.

Ordered that the order is modified, on the law, by deleting the provision thereof, in effect, denying that branch of the motion of the defendant Neekianund Khulpateea which was for summary judgment dismissing, as time-barred, so much of the amended complaint insofar as asserted against him as was based upon alleged acts of medical malpractice and lack of informed consent occurring prior to November 24, 2004, and substituting therefor a provision granting that branch of the motion; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements.

The plaintiff is the widower of the decedent, Esther Nisanov (hereinafter the decedent). On several occasions throughout 2003 and 2004, the decedent presented to her gynecologist, the defendant Inna Lopatinsky, with complaints of, inter alia, severe abdominal pain. On May 12, 2004, Lopatinsky discovered that the decedent had enlarged ovaries, and a sonogram taken that day revealed a thickening of the endometrial wall. Lopatinsky referred the decedent to the defendant Neekianund

Khulpateea, a gynecological oncologist. On September 7, 2004, Khulpateea performed a hysteroscopic polypectomy on the decedent. He removed a polyp from the uterine cavity, which was found to be benign. On September 24, 2004, Khulpateea met with the decedent and told her to return to Lopatinsky for regular follow-up care.

Thereafter, the decedent continued to experience pain. Lopatinsky referred the decedent for another ultrasound, which revealed fluid in the endometrial cavity and no adnexal masses, but the ovaries were not visualized. In September 2005, Lopatinsky referred the decedent to Khulpateea again because she continued to complain of vaginal bleeding and lower abdominal and back pain. On September 2, 2005, Khulpateea performed an endometrial biopsy on the decedent, which revealed a "weakly proliferative endometrium." He also performed an examination on the decedent, which he found to be "unremarkable." He advised the decedent to have another pelvic and transvaginal sonogram in three months, and if the fluid reaccumulated or she bled again, he would perform a hysteroscopy. On November 30, 2005, the decedent underwent another ultrasound, which revealed a mass on the left adnexa. In December 2005, the decedent underwent a total abdominal hysterectomy and bilateral salpingo-oophorectomy, and was diagnosed with stage IIIC fallopian tube carcinoma. The decedent died on September 18, 2009.

On May 24, 2007, the plaintiff and the decedent commenced this action against Khulpateea and Lopatinsky alleging, inter alia, medical malpractice and lack of informed consent. Subsequently, the plaintiff served an amended complaint reflecting the decedent's death and asserting an additional cause of action to recover damages for wrongful death. The plaintiff alleged, among other things, that Khulpateea had failed to timely diagnose and treat the decedent's fallopian tube cancer, which resulted in the spread of the disease and her eventual death. Khulpateea and Lopatinsky separately moved for summary judgment dismissing the amended complaint insofar as asserted against each of them. The Supreme Court denied the motions. Khulpateea appeals.

In support of his motion, Khulpateea established, prima facie, that so much of the amended complaint insofar as asserted against him as was based on alleged acts of medical malpractice and lack of informed consent occurring prior to November 24, 2004 was time-barred, by demonstrating that the action was commenced on May 24, 2007 (see CPLR 214-a; Hofsiss v Goodman, 128 AD3d 898 [2015]).

The burden then shifted to the plaintiff to establish the applicability of the continuous treatment doctrine, which tolls the statute of limitations until the end of the course of treatment (*see Schwelnus v Urological Assoc. of L.I., P.C.*, 94 AD3d 971 [2012]). "To establish that the continuous treatment doctrine applies, a plaintiff is 'required to demonstrate that there was a course of treatment, that it was continuous, and that it was in respect to the same condition or complaint underlying the claim of malpractice' " (*Ceglio v BAB Nuclear Radiology, P.C.*, 120 AD3d 1376, 1377 [2014], quoting *Baptiste v Harding-Marin*, 88 AD3d 752, 753 [2011]). "Continuity of treatment is often found to exist 'when further treatment is explicitly anticipated by both physician and patient as manifested in the form of a regularly scheduled appointment for the near future, agreed upon during th[e] last visit, in conformance with the periodic appointments which characterized the treatment in the immediate past' " (*Gomez v Katz*, 61 AD3d 108, 112 [2009], quoting *Richardson v Orentreich*, 64 NY2d 896, 898-899 [1985]; *see Petito v Roberts*, 113 AD3d 743, 744 [2014]). Here, the plaintiff failed to show that there was a continuous course of treatment. The diagnostic services performed by Khulpateea were discrete and complete, and not part of a course of treatment (*see Chambers v Mirkinson*, 68 AD3d 702 [2009]; *Robertson v Bozza & Karafiol*, 242 AD2d 613 [1997]). Moreover, the plaintiff failed to submit evidence showing that the decedent and Khulpateea contemplated further treatment after the follow-up visit on September 24, 2004. The decedent did not schedule another appointment with Khulpateea until she returned to see him in 2005, and she only did so then because Lopatinsky referred her to him (*see Rizk v Cohen*, 73 NY2d 98, 103 [1989]; *Cole v Richard G. Karanfilian, M.D., P.C.*, 117 AD3d 670, 671-672 [2014]). Accordingly, the Supreme Court should have granted that branch of Khulpateea's motion which was for summary judgment dismissing, as time-barred, so much of the amended complaint insofar as asserted against him as was based on alleged acts of medical malpractice and lack of informed consent occurring prior to November 24, 2004, or 2.5 years before the commencement of this action.

"In an action sounding in medical malpractice, a defendant moving for summary judgment must make a prima facie showing either that there was no departure from accepted medical practice, or that any departure was not a proximate cause of the patient's injuries" (*Matos v Khan*, 119 AD3d 909, 910 [2014]; *see Poter v Adams*, 104 AD3d 925, 926 [2013]; *Salvia v St. Catherine of Sienna Med. Ctr.*, 84 AD3d 1053, 1053-1054 [2011]; *Heller v Weinberg*, 77 AD3d 622, 622-623 [2010]). Once

the defendant has made such a showing, the plaintiff, in opposition, must submit evidentiary facts or materials to rebut the defendant's prima facie showing, but only as to those elements on which the defendant met the prima facie burden (*see Poter v Adams*, 104 AD3d at 926; *Stukas v Streiter*, 83 AD3d 18, 23-24 [2011]).

Here, Khulpateea established, prima facie, that he did not depart from good and accepted medical practice in treating the decedent on or after November 24, 2004 by submitting, inter alia, his own deposition testimony, Lopatinsky's deposition testimony, and an expert affirmation. Contrary to the plaintiff's contention, Khulpateea properly relied upon his own unsigned deposition transcript and Lopatinsky's unsigned deposition transcript because both parties submitted these transcripts in support of their respective motions for summary judgment (*see Pavane v Marte*, 109 AD3d 970 [2013]; *David v Chong Sun Lee*, 106 AD3d 1044, 1045 [2013]; *Vetrano v J. Kokolakis Contr., Inc.*, 100 AD3d 984, 986 [2012]; *Rodriguez v Ryder Truck, Inc.*, 91 AD3d 935, 936 [2012]; *Doviak v Finkelstein & Partners, LLP*, 90 AD3d 696 [2011]; *Ashif v Won Ok Lee*, 57 AD3d 700 [2008]). However, Khulpateea's expert affirmation was conclusory in opining that his actions or omissions were not a proximate cause of the decedent's alleged injuries and death, and was therefore insufficient to establish, prima facie, that any departures by Khulpateea from the applicable standard of care were not a proximate cause of the decedent's alleged injuries and death (*see generally Seiden v Sonstein*, 127 AD3d 1158, 1162 [2015]; *Trauring v Gendal*, 121 AD3d 1097, 1098 [2014]; *Matos v Khan*, 119 AD3d at 910; *Petrik v Pilat*, 119 AD3d 760, 761 [2014]).

In opposition, the plaintiff submitted, inter alia, a redacted expert affirmation from a physician who was board certified in obstetrics and gynecology, which raised a triable issue of fact as to whether Khulpateea departed from accepted standards of care in failing to administer proper diagnostic tests to the decedent in September 2005. " 'Summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions' " (*Guctas v Pessolano*, 132 AD3d 632, 633 [2015], quoting *Feinberg v Feit*, 23 AD3d 517, 519 [2005]; *see Schmitt v Medford Kidney Ctr.*, 121 AD3d 1088 [2014]). Conflicting expert opinions raise credibility issues that are to be resolved by the factfinder (*see Loaiza v Lam*, 107 AD3d 951, 953 [2013]; *Roca v Perel*, 51 AD3d 757, 759 [2008]). Accordingly, the Supreme Court properly denied that branch of Khulpateea's motion which was for summary

judgment dismissing, on the merits, so much of the amended complaint insofar as asserted against him as was based on alleged acts of medical malpractice occurring on or after November 24, 2004.

The Supreme Court also properly denied that branch of Khulpateea's motion which was for summary judgment dismissing, on the merits, so much of the lack of informed consent cause of action insofar as asserted against him as was based on acts or omissions occurring on or after November 24, 2004. Khulpateea failed to present any arguments or expert evidence with respect to the merits of the lack of informed consent cause of action.

In light of the foregoing, the parties' remaining contentions need not be reached. Mastro, J.P., Dillon, Miller and Barros, JJ., concur.