Valerio v Liberty Behavioral Mgt. Corp. (2020 NY Slip Op 06574)





Valerio v Liberty Behavioral Mgt. Corp.


2020 NY Slip Op 06574


Decided on November 12, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 12, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

RUTH C. BALKIN, J.P.
CHERYL E. CHAMBERS
SHERI S. ROMAN
ROBERT J. MILLER, JJ.


2018-02714
 (Index No. 2916/12)

[*1]Melanie Valerio, etc., et al., respondents,
v
Liberty Behavioral Management Corp., etc., et al., defendants, QPH, Inc., etc., appellant.


Rutherford & Christie LLP, New York, NY (David S. Rutherford and Samantha Vélez of counsel), for appellant.
Slavin & Slavin, New York, NY (Barton L. Slavin of counsel), for respondents.



DECISION & ORDER
In an action, inter alia, to recover damages for medical malpractice, the defendant QPH, Inc., appeals from an order of the Supreme Court, Kings County (Michelle Weston, J.), dated November 2, 2017. The order, insofar as appealed from, denied that branch of the motion of the defendants Liberty Behavioral Management Corp., Liberty Behavioral Healthcare Management Corp., and QPH, Inc., which was for summary judgment dismissing the amended complaint insofar as asserted against the defendant QPH, Inc., doing business as the Holliswood Hospital.
ORDERED that the order is affirmed insofar as appealed from, with costs.
On April 19, 2010, the plaintiffs' decedent, Joseph Valerio (hereinafter the decedent), was voluntarily admitted to the Holliswood Hospital (hereinafter the hospital), which was operated by QPH, Inc. (hereinafter QPH), for psychiatric evaluation and inpatient treatment. The decedent was experiencing, among other things, passive suicidal ideation. Douglas F. Munsey was an attending physician who treated the decedent with the assistance of other hospital nursing staff during the time the decedent was receiving inpatient care for his psychological condition. On April 27, 2010, the decedent, while still receiving inpatient care at the hospital, committed suicide by tying a bed sheet to the bathroom door and hanging himself.
The decedent's wife, Melanie Valerio, individually and as the testatrix of the estate of the decedent, and the estate of the decedent, commenced this action against Liberty Behavioral Management Corp., (hereinafter LBMC), Liberty Behavioral Healthcare Management Corp., (hereinafter LBHMC), QPH, and Munsey, alleging that the decedent's suicide was proximately caused by medical malpractice committed by Munsey in the course of his treatment of the decedent, as well as by the negligent care of hospital nursing staff. LBMC, LBHMC, and QPH moved for summary judgment dismissing the amended complaint insofar as asserted against them, arguing, inter alia, that QPH cannot be held vicariously liable for Munsey's alleged medical malpractice because he was an independent contractor, and that the decedent received proper care from the hospital staff. The Supreme Court granted that branch of the motion which was for summary judgment dismissing the amended complaint insofar as asserted against LBMC and LBHMC and, [*2]as is relevant to this appeal, denied that branch of the motion which was for summary judgment dismissing the amended complaint insofar as asserted against QPH. QPH appeals.
"In general, under the doctrine of respondeat superior, a hospital may be held vicariously liable for the negligence or malpractice of its employees acting within the scope of employment, but not for negligent treatment provided by an independent physician, as when the physician is retained by the patient himself" (Seiden v Sonstein, 127 AD3d 1158, 1160; see Hill v St. Clare's Hosp., 67 NY2d 72, 79; Dupree v Westchester County Health Care Corp., 164 AD3d 1211, 1213). However, "vicarious liability for the medical malpractice of an independent physician may be imposed under a theory of apparent or ostensible agency" (Keesler v Small, 140 AD3d 1021, 1022; see Hill v St. Clare's Hosp., 67 NY2d at 79). "'In order to create such apparent agency, there must be words or conduct of the principal, communicated to a third party, which give rise to the appearance and belief that the agent possesses the authority to act on behalf of the principal. The third party must reasonably rely on the appearance of authority, based on some misleading words or conduct by the principal, not the agent. Moreover, the third party must accept the services of the agent in reliance upon the perceived relationship between the agent and the principal, and not in reliance on the agent's skill'" (Keesler v Small, 140 AD3d at 1022, quoting Dragotta v Southampton Hosp., 39 AD3d 697, 698; see Loaiza v Lam, 107 AD3d 951, 952). "In evaluating whether a doctor is the apparent agent of a hospital, a court should consider all attendant circumstances to determine whether the patient could properly have believed that the physician was provided by the hospital" (Loaiza v Lam, 107 AD3d at 952-953). Additionally, "[a]n exception to this general rule exists where a plaintiff seeks to hold a hospital vicariously liable for the alleged malpractice of an attending physician who is not its employee where a patient comes to the [hospital] seeking treatment . . . [but] not from a particular physician of the patient's choosing" (Muslim v Horizon Med. Group, P.C., 118 AD3d 681, 683 [internal quotation marks omitted]). "Thus, in order to establish its entitlement to judgment as a matter of law defeating a claim of vicarious liability, a hospital must demonstrate that the physician alleged to have committed the malpractice was an independent contractor and not a hospital employee, and that the exception to the general rule did not apply" (id. at 683 [internal quotation marks omitted]). Here, QPH failed to meet its prima facie burden on this issue (see Diller v Munzer, 141 AD3d 628, 629; Keitel v Kurtz, 54 AD3d 387, 390; Filemyr v Lombardo, 11 AD3d 581).
"'Medical malpractice actions require proof that the defendant physician deviated or departed from the accepted community standards of practice, and that such deviation . . . was a proximate cause of the plaintiff's injuries'" (Dixon v Chang, 163 AD3d 525, 526, quoting Bongiovanni v Cavagnuolo, 138 AD3d 12, 16). Thus, in moving for summary judgment dismissing a complaint alleging malpractice, a defendant "must establish, prima facie, either that there was no departure or that any departure was not a proximate cause of the plaintiff's injuries" (Matthis v Hall, 173 AD3d 1162, 1163 [internal quotation marks omitted]). Here, QPH also failed to meet its prima facie burden with respect to both the allegations of medical malpractice made regarding Munsey's treatment of the decedent and the alleged negligent care provided by the hospital nursing staff.
Accordingly, we agree with the Supreme Court's denial of that branch of the motion which was for summary judgment dismissing the amended complaint insofar as asserted against QPH, regardless of the sufficiency of the plaintiffs' opposition papers (see generally Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853).
BALKIN, J.P., CHAMBERS, ROMAN and MILLER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court