| Ciocca v Shats |
|:---:|
| 2026 NY Slip Op 30642(U) |
| February 19, 2026 |
| Supreme Court, New York County |
| Docket Number: Index No. 805214/2022 |
| Judge: John J. Kelley |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    HON. JOHN J. KELLEY                                PART                          56M

                                    *Justice*

-------------------------------------------------------------------------------X

DANIELA CIOCCA,                                                INDEX NO.           805214/2022

                              Plaintiff,                       MOTION DATE         02/19/2026

                                                               MOTION SEQ. NO.         003
                    - v -

RITA SHATS, M.D., and NEW LOOK NEW LIFE SURGICAL
ARTS,                                                          **DECISION + ORDER ON
                                                                       MOTION**

                              Defendants.

-------------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 003) 91, 92, 93, 94

were read on this motion to/for            REARGUMENT/RECONSIDERATION            .

In this action to recover damages for medical malpractice based on alleged departures

from good practice, lack of informed consent, common-law negligence, and breach of contract,

the defendant New Look New Life Surgical Arts (New Look) moves pursuant to CPLR 2221(d)

for leave to reargue its motion for summary judgment dismissing the complaint insofar as

asserted against it (MOT SEQ 001), which had been denied in part in an order dated November

24, 2025.  The plaintiff opposes the instant motion.  The motion is granted to the extent that

leave to reargue is granted, but, upon reargument, the court adheres to its initial determinations

that there are triable issues of fact as to whether New Look may be held vicariously liable for the

alleged malpractice and tortious conduct of its codefendant, Rita Shats, M.D., specifically under

the theory of apparent or ostensible agency, and whether New Look may be held directly liable

for negligently credentialing Shats to perform certain procedures at its facility.

As the Appellate Division, First Department, has explained,

> "[a] motion for leave to reargue pursuant to CPLR 2221 is addressed to the
> sound discretion of the court and may be granted only upon a showing 'that the
> court overlooked or misapprehended the facts or the law or for some reason
> mistakenly arrived at its earlier decision'"

[* 1]

(*William P. Pahl Equip. Corp. v Kassis*, 182 AD2d 22, 27 [1st Dept 1992], quoting *Schneider v Solowey*, 141 AD2d 813, 813 [2d Dept 1988]; *see Matter of Setters v AI Props. & Devs. (USA) Corp.*, 139 AD3d 492, 4492 [1st Dept 2016]). The court agrees with New Look that the court had misapprehended the facts underlying its contention that Shats was not its employee at the time when she performed the subject surgery upon the plaintiff, and that New Look made a prima facie showing, through deposition testimony and affirmations submitted in support of its initial motion, that Shats was not, in fact, its employee. Contrary to the plaintiff's contention in this respect, New Look was not obligated to submit documentary evidence, such as an Internal Revenue Service Form 1099, or any written contract between it and Shats describing their contractual relationship. The testimony and affirmations were sufficient to establish, prima facie, that New Look did not actually have an employer-employee relationship with Shats. The court notes that the plaintiff, during discovery, could have requested such documentation if she believed that she would need to prove the existence of such a relationship in order to hold New Look vicariously liable for Shats's alleged wrongdoing.

Nonetheless, New Look, in support of its initial motion, submitted the plaintiff's deposition testimony, which revealed the existence of a triable issue of fact as to whether New Look could be held liable for Shats's tortious conduct under the theory of apparent or ostensible agency. "'In general, under the doctrine of respondeat superior, a hospital may be held vicariously liable for the negligence or malpractice of its employees acting within the scope of employment, but not for negligent treatment provided by an independent physician, as when the physician is retained by the patient himself'" (*Valerio v Liberty Behavioral Mgt. Corp.*, 188 AD3d 948, 949 [2d Dept 2020], quoting *Seiden v Sonstein*, 127 AD3d 1158, 1160 [2d Dept 2015]; *see Hill v St. Clare's Hosp.*, 67 NY2d 72, 79 [1986]; *Dupree v Westchester County Health Care Corp.*, 164 AD3d 1211, 1213 [2d Dept 2018]). However, "'vicarious liability for the medical malpractice of an independent physician may be imposed under a theory of apparent or

805214/2022   CIOCCA, DANIELA vs. SHATS M.D, RITA ET AL                    Page 2 of 8
  Motion No.  003

2 of 8

ostensible agency'" (*Valerio v Liberty Behavioral Mgt. Corp*., 188 AD3d at 949, quoting *Keesler v Small*, 140 AD3d 1021, 1022 [2d Dept 2016]; *see Hill v St. Clare's Hosp*., 67 NY2d at 79).

> "'In order to create such apparent agency, there must be words or conduct of the principal, communicated to a third party, which give rise to the appearance and belief that the agent possesses the authority to act on behalf of the principal. The third party must reasonably rely on the appearance of authority, based on some misleading words or conduct by the principal, not the agent. Moreover, the third party must accept the services of the agent in reliance upon the perceived relationship between the agent and the principal, and not in reliance on the agent's skill'"

(*Keesler v Small*, 140 AD3d at 1022, quoting *Dragotta v Southampton Hosp*., 39 AD3d 697, 698 [2d Dept 2007]; *see Valerio v Liberty Behavioral Mgt. Corp*., 188 AD3d at 949; *Loaiza v Lam*, 107 AD3d 951, 952 [2d Dept 2013]). "'In evaluating whether a doctor is the apparent agent of a hospital, a court should consider all attendant circumstances to determine whether the patient could properly have believed that the physician was provided by the hospital'" (*Valerio v Liberty Behavioral Mgt. Corp*., 188 AD3d at 949, quoting *Loaiza v Lam*, 107 AD3d at 952-953).

Additionally, "[a]n exception to this general rule exists where a plaintiff seeks to hold a hospital vicariously liable for the alleged malpractice of an attending physician who is not its employee where a patient comes to the [hospital] seeking treatment . . . [but] not from a particular physician of the patient's choosing" (*Muslim v Horizon Med. Group, P.C*., 118 AD3d 681, 683 [2d Dept 2014] [internal quotation marks omitted]; *see Valerio v Liberty Behavioral Mgt. Corp*., 188 AD3d at 949). Stated another way,

> "'a hospital may be held vicariously liable, based on the principle of agency by estoppel, for the acts of an independent physician where the physician was provided by the hospital or was otherwise acting on the hospital's behalf, and the patient reasonably believed that the physician was acting at the hospital's behest'"

(*Malcolm v Mount Vernon Hosp*., 309 AD2d 704, 705 [1st Dept 2003], quoting *Sarivola v Brookdale Hosp. & Medical Ctr*., 204 AD2d 245, 245-246 [1st Dept 1994] [citation omitted]). "'Thus, in order to establish its entitlement to judgment as a matter of law defeating a claim of vicarious liability, a hospital must demonstrate that the physician alleged to have committed the

805214/2022 CIOCCA, DANIELA vs. SHATS M.D, RITA ET AL Page 3 of 8
Motion No. 003

3 of 8

[* 3]

malpractice was an independent contractor and not a hospital employee, and that the exception to the general rule did not apply'" (*Valerio v Liberty Behavioral Mgt. Corp.*, 188 AD3d at 949-950, quoting *Muslim v Horizon Med. Group, P.C.*, 118 AD3d at 683 [some internal quotation marks omitted]). In *Sklarova v Coopersmith* (180 AD3d 510, 510 [1st Dept 2020]), for example, although the plaintiff there retained a particular surgeon to perform a shoulder procedure, that surgeon did not choose the anesthesiologist who would assist with the surgery that was performed at the defendant hospital. It turned out that the hospital did not employ or control the anesthesiologist who ultimately was assigned to the procedure. The Appellate Division, First Department, thus reinstated the plaintiff's claims against the hospital, concluding that there were triable issues of fact as to whether the anesthesiologist was negligent, and whether the doctrine of ostensible agency rendered the hospital vicariously liable for the anesthesiologist's conduct.

In the instant dispute, the plaintiff testified that she did not specifically seek to retain Shats as a cosmetic gynecologist to perform cosmetic surgery on her labia, nor was she referred to any particular practitioner in that field, let alone referred to Shats in particular. Rather, she testified at her deposition that, when she presented to New Look for her third and final diVa Laser Vaginal Therapy, she was being seen by Claudia Kim, M.D., and was speaking with Dr. Kim and an administrative assistant named Janette, while Shats was in an adjacent room. She averred Dr. Kim informed her that, because she was not responding to the diVa therapy, she "might be a candidate for a surgery to help retighten" her vaginal wall, after which Shats entered the room in which the plaintiff had been speaking with Dr. Kim. According to the plaintiff, Shats "very much made a show of how big my vaginal wall was and how big my labia minora were in the aftermath of having a baby and being stretched out." The plaintiff asserted:

> "[a]nd then she started to tell me, as she knew I was there to increase sensitivity, she told me if you increase your labia majora, then that's going to increase the surface area so that when you're having sex, when a penis is interacting with it, it increases sensitivity and if you reduce your labia minora, that then also gives more access to the labia majora.
>
> "So she made it sound like that so [much] of that sensitivity came from the labia

805214/2022  CIOCCA, DANIELA vs. SHATS M.D, RITA ET AL
Motion No.  003

Page 4 of 8

4 of 8

[* 4]

and so she told me that by doing those two surgeries, I would also increase sensitivity."

The plaintiff additionally testified that she discussed anticipated healing time with Shats, as well as how long it might take before she could have sex after undergoing vaginoplasty, perineoplasty, and labiaplasty. While the plaintiff was at New Look, Dr. Kim and Janette essentially summoned Shats, who already was at the facility, to the room in which the plaintiff was consulting with Dr. Kim, for the purpose of having Shats speak with the plaintiff about additional treatments and procedures, and perhaps convince her to do so at New Look.

"[A] defendant who employs an independent contractor to perform services that the defendant has undertaken to perform, is liable for the negligence of the independent contractor" (*Mduba v Benedictine Hosp.,* 52 AD2d 450, 453 [3d Dept 1976]). Hence, a

> "defendant hospital, having held itself out to the public as an institution furnishing doctors, staff and facilities . . . , was under a duty to perform those services and is liable for the negligent performance of those services by the doctors and staff it hired *and furnished* to [a patient]. Certainly, the person who avails himself of hospital facilities has a right to expect satisfactory treatment from any personnel *who are furnished* by the hospital"

(*id*. [emphasis added]; *see A.A. v St. Barnabas Hosp*., 176 AD3d 582, 583 [1st Dept 2019]; *Malcolm v Mount Vernon Hosp*., 309 AD2d at 705-706). The court notes that *Mduba,* which arose in the context of emergency treatment, has not been limited by the courts to emergency treatment (*see A.A. v St. Barnabas Hosp*., 176 AD3d at 583; *Schacherbauer v University Assoc. in Obstetrics & Gynecology, P.C*, 56 AD3d 751, 752 [2d Dept 2008]; *Galina v Lewis*, 2020 NY Slip Op 32276[U], *5, 2020 NY Misc LEXIS 3262, *10-11 [Sup Ct, N.Y. County, Jul. 1, 2020]).

Consequently, New Look failed to meet its prima facie burden on the issue of vicarious liability, as it failed to demonstrate that both exceptions to the general rule concerning vicarious liability were inapplicable (*see Valerio v Liberty Behavioral Mgt. Corp*., 188 AD3d at 950; *Diller v Munzer*, 141 AD3d 628, 629 [2d Dept 2016]; *Keitel v Kurtz*, 54 AD3d 387, 390 [2d Dept 2008]; *Welch v Scheinfeld*, 21 AD3d 802, 808-809 [1st Dept 2005]; *Filemyr v Lombardo*, 11 AD3d 581, 581 [2d Dept 2004]). Specifically, it failed to demonstrate that the plaintiff came to its facility

805214/2022  CIOCCA, DANIELA vs. SHATS M.D, RITA ET AL                    Page 5 of 8
 Motion No. 003

5 of 8

seeking treatment from Shats in particular, rather than, as the plaintiff contended, simply being presented with Shats by Janette, a New Look employee, and Dr. Kim, whom she also believed to have been speaking to her on behalf of New Look. Thus, although the court misapprehended the facts underlying Shats's actual relationship with New Look, it adheres to its determination that there are triable issues of fact as to whether New Look may be held vicariously liable to the plaintiff, albeit under the theory of apparent or ostensible agency.

The court notes that New Look might also be held directly liable to the plaintiff for failing fully and properly to vet Shats's credentials before permitting her to perform the procedures underpinning this action.[1] Although New Look established that it checked and reviewed whether Shats graduated from medical school and was licensed to practice medicine in New York, New Look has made no persuasive argument to this court that it had no obligation to ascertain whether Shats nonetheless was trained in and qualified for the performance of a vaginoplasty, perineoplasty, or labiaplasty before she performed those procedures at its facility. This is important, since New Look advertised on its web site that it furnishes "board-certified cosmetic surgeons." In this respect, the plaintiff's expert opined that a cosmetic gynecologist who was not also a plastic surgeon would not be qualified to perform a vaginoplasty, perineoplasty, or labiaplasty. Although there is, in existence, an American Board of Cosmetic Gynecology that awards a "Level One" nonsurgical diploma, a "Level Two" surgical fellowship, and a "Level Three" board certification, Shats did not establish that she was board certified in any specialties other than gynecology or obstetrics, including cosmetic gynecology. Although Shats testified that she did not need further training or certification to perform minimally invasive vaginal surgery, one of the issues before the court is whether New Look was obligated to delve further into Shats's training and background to assure patients undergoing surgery at its facility

---

[1] Negligent credentialing constitutes a cause of action independent of medical malpractice (*see Taylor v Methodist Hosp.*, 6 Misc 3d 1008[A], 2004 NY Slip Op 51750[U], *4, 2004 NY Misc LEXIS 2898, *9 [Sup Ct, Kings County, Nov. 1, 2004]).

**805214/2022  CIOCCA, DANIELA vs. SHATS M.D, RITA ET AL**                                    **Page 6 of 8**
**Motion No.  003**

[* 6]

that the practitioner performing a procedure there was actually qualified, *in point of fact*, to perform the procedures that were to be performed.

In *Sims v Pearl* (2025 NY Slip Op 34185[U], *18-19, 2025 NY Misc LEXIS 8767, *32-33 [Sup Ct, N.Y. County, Oct. 31, 2025] [Kelley, J.]), this court concluded that SurgiCore Surgical Center (SSC), an ambulatory surgery center somewhat similar to New Look, established its prima facie entitlement to judgment as a matter of law in connection with a negligent credentialing cause of action. The court reached this conclusion because SSC's expert explained that SSC required the individually named defendant surgeon to provide it with

> "personal information, educational details, current hospital and surgical center privileges, board certifications, licensure, proof of professional liability insurance, a statement of his own health, medical references, professional status information, and his federal Drug Enforcement Administration (DEA) identification number. *[The expert] noted that SSC required [the physician] to specify the particular orthopedic surgical privileges that he was and was not requesting permission to undertake at SSC*. He further explained that SSC obtained a copy of [the physician's] curriculum vitae, verified his identity, confirmed that he was registered with and had an active medical license from both the State of New Jersey Board of Medical Examiners and the State of New York Board of Medical Examiners, and confirmed that he was registered with the DEA and the New Jersey Division of Consumer Affairs Controlled Dangerous Substances division. He stated that SSC also obtained copies of [the physician's] diplomas and certificates, including, but not limited to, certification by the American Board of Clinical Orthopaedic Surgery. [The expert] explained that SSC obtained [the physician's] certificate of liability insurance, obtained signed reference forms, obtained [the physician's] verified certifications for cardiopulmonary resuscitation, infection control, and opioid prescriber trainings, verified his active status at other medical facilities, made inquiry to National Practitioner Data Bank, conducted a search of the federal National Plan and Provider Enumeration System for his National Provider Identifier number, and obtained a physician profile from the American Medical Association. [The expert] asserted that SSC's inquiry to the Office of the Inspector General of the United States Department of Health and Human Services reflected that [the physician] was not included on that agency's list of excluded individuals. [The expert] thus concluded that SSC's process for credentialing [the physician] to perform orthopedic procedures at SSC met the generally accepted administrative standards with respect to its May 24, 2016 determination to credential him. He further opined that SSC's administrative file documented that [the physician] had completed an orientation and skills checklist, and had provided a completed annual health assessment form from an October 24, 2017 examination."

(emphasis added). By way of contrast, New Look did not make a similar detailed showing here.

Hence, there is no basis upon which the court may conclude that it misapprehended the law

805214/2022 CIOCCA, DANIELA vs. SHATS M.D, RITA ET AL
Motion No. 003

Page 7 of 8

[* 7]

applicable to negligent credentialing, or that it incorrectly determined that there were triable issues of fact presented in the record in connection with that cause of action.

Accordingly, it is,

ORDERED that the motion of the defendant New Look New Life Surgical Arts is granted only to the extent that it is granted leave to reargue its motion for summary judgment, but, upon reargument, the court adheres to the determinations in its previous order denying that defendant's motion for summary judgment, upon concluding that there are triable issues of fact as to whether New Look New Life Surgical Arts may be held vicariously liable for the alleged tortious conduct of its codefendant, Rita Shats, M.D., and whether New Look New Life Surgical Arts may be held directly liable to the plaintiff for negligently bestowing surgical privileges upon Rita Shats, M.D., that allowed her to perform a vaginoplasty, perineoplasty, and labiaplasty upon the plaintiff at its facility, without properly vetting her credentials and qualifications to perform those procedures.

This constitutes the Decision and Order of the court.

| 2/19/2026 | | |
| --- | --- | --- |
| **DATE** | | **JOHN J. KELLEY, J.S.C.** |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
| --- | --- | --- | --- | --- | --- | --- |
| | | GRANTED | DENIED | X | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

**805214/2022   CIOCCA, DANIELA vs. SHATS M.D, RITA ET AL**
**Motion No.  003**

**Page 8 of 8**

[* 8]