Young v Kamath (2026 NY Slip Op 01091)

Young v Kamath

2026 NY Slip Op 01091

Decided on February 25, 2026

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 25, 2026
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

BETSY BARROS, J.P.
BARRY E. WARHIT
HELEN VOUTSINAS
LILLIAN WAN, JJ.

2021-00470
 (Index No. 605590/16)

[*1]Dolores Young, etc., respondent, 
vGanesh S. Kamath, etc., et al., appellants, et al., defendants.

Lewis Johs Avallone Aviles LLP, Islandia, NY (Amy E. Bedell and Jordan Palatiello of counsel), for appellants Ganesh S. Kamath and Eric R. Uyguanco.
Heidell, Pittoni, Murphy & Bach, LLP, Garden City, NY (Daniel S. Ratner, Daniel Lei, and Greg Freedman of counsel), for appellants Jeetinder K. Gujral and Southside Hospital.
Levine & Grossman, Mineola, NY (Brian C. Lockhart and Jeffrey Hummel of counsel), for respondent.

DECISION & ORDER
In an action, inter alia, to recover damages for medical malpractice, the defendants Jeetinder K. Gujral and Southside Hospital and the defendants Ganesh S. Kamath and Eric R. Uyguanco separately appeal from an order of the Supreme Court, Suffolk County (David T. Reilly, J.), dated December 23, 2020. The order, insofar as appealed from by the defendants Jeetinder K. Gujral and Southside Hospital, denied those branches of their motion which were for summary judgment dismissing the causes of action to recover damages for medical malpractice, wrongful death, and loss of services insofar as asserted against them and so much of the complaint as alleged that the defendant Southside Hospital was vicariously liable for the alleged malpractice of the defendant Ganesh S. Kamath. The order, insofar as appealed from by the defendants Ganesh S. Kamath and Eric R. Uyguanco, denied those branches of their motion which were for summary judgment dismissing the causes of action to recover damages for medical malpractice, wrongful death, and loss of services insofar as asserted against them and the cause of action to recover damages for lack of informed consent insofar as asserted against the defendant Eric R. Uyguanco.
ORDERED that the order is modified, on the law, by deleting the provision thereof denying that branch of the motion of the defendants Ganesh S. Kamath and Eric R. Uyguanco which was for summary judgment dismissing the cause of action to recover damages for lack of informed consent insofar as asserted against the defendant Eric R. Uyguanco, and substituting therefor a provision granting that branch of the motion; as so modified, the order is affirmed insofar as appealed from, with one bill of costs to the plaintiff.
In 2005, due to a history of pulmonary embolism and deep vein thrombosis, John J. Young (hereinafter the decedent) was prescribed Coumadin by his primary care physician. On November 19, 2013, the decedent presented to the defendant South Bay Cardiovascular (hereinafter South Bay), complaining of chest pain. Tests conducted revealed that the decedent had a low heart rate and varying degrees of atrioventricular (hereinafter AV) block. On February 18, 2014, the [*2]decedent presented to the defendant Eric R. Uyguanco, an employee of South Bay, for an electrophysiologic consultation. Uyguanco noted that the decedent took 7.5 milligrams of Coumadin five days a week and 3.25 milligrams of Coumadin two days a week, and determined that the decedent had evidence of sick sinus syndrome and AV node disease, for which Uyguanco recommended a pacemaker placement procedure. Uyguanco advised the decedent to stop taking Coumadin four days prior to the procedure, and then resume taking it thereafter, due to the risk of bleeding during the procedure.
On March 19, 2014, the decedent presented to Good Samaritan Hospital for the pacemaker placement procedure. The decedent's international normalized ratio (hereinafter INR) level at that time was noted to be 1.2. The decedent's pacemaker was placed without complication, and the decedent was instructed to resume taking Coumadin that evening. The decedent was discharged from Good Samaritan on March 20, 2014.
Within days of the decedent's discharge from Good Samaritan, he told his daughter that he did not feel right and felt that there was something wrong. On March 23, 2014, the decedent presented to the emergency department of the defendant Southside Hospital (hereinafter Southside), complaining of chest pain. The decedent was evaluated by the defendant Ganesh S. Kamath, a cardiologist employed at South Bay, on call at Southside. Kamath diagnosed the decedent with acute coronary syndrome and unstable angina and then referred the decedent to the defendant Jeetinder K. Gujral, a hospitalist employed by Southside.
Gujral discontinued the decedent's use of Coumadin and referred the decedent to undergo a right ventricular lead revision/repositioning of the pacemaker procedure to be conducted by Uyguanco. Following the procedure on March 24, 2014, after examination of the decedent, both Gujral and Kamath recommended that the decedent resume his Coumadin intake. On March 27, 2014, the decedent's INR level was noted to be 1.17. Thereafter, Gujral directed the decedent to take 5 milligrams of Coumadin. However, after the decedent's discharge from Southside on March 27, 2014, and upon returning home, he returned to taking 7.5 milligrams of Coumadin.
On March 29, 2014, the decedent returned to Southside by ambulance. The decedent complained of pain and swelling in his right leg, which was confirmed by examination. The decedent's lab results showed an INR level of 1.27, and the decedent was diagnosed with deep vein thrombosis (hereinafter DVT). On April 3, 2014, the decedent was discharged to Bellehaven Center for Rehabilitation & Nursing Care. On April 4, 2014, he was transferred back to Southside after complaining of swelling and pain in his left leg. Upon presentation to Southside, it was discovered that the decedent's INR level was 4.71. It was determined that the decedent's left common femoral, femoral, and popliteal veins were nearly completely occluded and the visualized segments of the posterior tibial and peroneal veins were occluded.
The decedent was thereafter transferred to Stony Brook University Hospital for treatment. On April 7, 2014, the decedent underwent a catheter-directed thrombolysis. On April 10, 2014, a CT scan revealed a large left-sided hemorrhagic stroke. Thereafter, on April 11, 2014, the decedent died.
In April 2016, the plaintiff, the wife of the decedent and executor of his estate, commenced this action against, among others, Gujral, Southside, Kamath, and Uyguanco, inter alia, to recover damages for medical malpractice and wrongful death. Gujral and Southside (hereinafter together the Southside defendants) moved for summary judgment dismissing the complaint insofar as asserted against them. Kamath and Uyguanco (hereinafter together the South Bay defendants) moved for summary judgment dismissing the complaint insofar as asserted against them. In an order dated December 23, 2020, the Supreme Court, among other things, denied those branches of the Southside defendants' motion which were for summary judgment dismissing the causes of action to recover damages for medical malpractice, wrongful death, and loss of services insofar as asserted against them and so much of the complaint as alleged that Southside was vicariously liable for the alleged malpractice of Kamath. In addition, the court denied those branches of the South Bay defendants' motion which were for summary judgment dismissing the causes of action to recover [*3]damages for medical malpractice, wrongful death, and loss of services insofar as asserted against them and the cause of action to recover damages for lack of informed consent insofar as asserted against Uyguanco. The Southside defendants and the South Bay defendants separately appeal.
"'The essential elements of medical malpractice are (1) a deviation or departure from accepted medical practice, and (2) evidence that such departure was a proximate cause of injury'" (Kunwar v Northwell Health, 229 AD3d 528, 532, quoting Mendoza v Maimonides Med. Ctr., 203 AD3d 715, 716; see Torres v Yakobov, 222 AD3d 692, 693). "'On a motion for summary judgment dismissing a cause of action alleging medical malpractice, the defendant bears the initial burden of establishing that there was no departure from good and accepted medical practice or that any alleged departure did not proximately cause the plaintiff's injuries'" (Vargas v Lee, 207 AD3d 684, 685, quoting Carradice v Jamaica Hosp. Med. Ctr., 198 AD3d 863, 684). "'In order to sustain this prima facie burden, the defendant must address and rebut any specific allegations of malpractice set forth in the plaintiff's complaint and bill of particulars'" (id., quoting Wiater v Lewis, 197 AD3d 782, 783; see Ciceron v Gulmatico, 220 AD3d 732, 734). "'A motion for summary judgment should not be granted where the facts are in dispute, where conflicting inferences may be drawn from the evidence, or where there are issues of credibility'" (Lee v South Nassau Communities Hosp., 231 AD3d 807, 809 [alteration omitted], quoting Khutoryanskaya v Laser & Microsurgery, P.C., 222 AD3d 633, 635). "'Summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions'" (Gilmore v Mihail, 174 AD3d 686, 687, quoting Feinberg v Feit, 23 AD3d 517, 519; see Fairchild v Lerner, 229 AD3d 506, 508).
Here, the Southside defendants demonstrated their prima facie entitlement to judgment as a matter of law dismissing the medical malpractice and wrongful death causes of action insofar as asserted against them. The Southside defendants submitted affirmations of experts who opined, inter alia, that Gujral followed the proper standard of care by withholding and resuming Coumadin usage and that Gujral was not a proximate cause of the decedent's injuries since the decedent did not take the directed five milligrams of Coumadin.
The South Bay defendants also demonstrated their prima facie entitlement to judgment as a matter of law dismissing the medical malpractice and wrongful death causes of action insofar as asserted against them. The South Bay defendants submitted an affirmation of an expert who opined, among other things, that the South Bay defendants followed the proper standard of care by withholding and resuming Coumadin usage and by monitoring the decedent's INR levels. The South Bay defendants' expert also opined that it was appropriate for the decedent to return to his normal at-home dosage of Coumadin, despite being prescribed five milligrams of Coumadin, and therefore, the South Bay defendants' actions were not a proximate cause of the decedent's injuries.
In opposition to these prima facie showings, the plaintiff raised triable issues of fact as to whether the Southside defendants and the South Bay defendants were liable for medical malpractice and the wrongful death of the decedent. The plaintiff submitted an affirmation of an expert who explained that the decedent was subtherapeutic for a prolonged period of time while remaining off any anticoagulation medication. The plaintiff's expert opined, inter alia, that Kamath, Gujral, and Uyguanco departed from the standard of care in failing to determine whether the decedent was properly anticoagulated and failed to make sure his INR level was within therapeutic range at the time of discharge. The plaintiff's expert opined that such a departure from the standard of care allowed the decedent's blood to be coagulable and ultimately contributed to the blood clots and DVT that led to his death. Accordingly, the Supreme Court properly denied those branches of the separate motions of the Southside defendants and the South Bay defendants which were for summary judgment dismissing the medical malpractice and wrongful death causes of action insofar as asserted against each of them.
A "cause of action alleging loss of consortium is derivative in nature" (Buzeska v Crystal Run Healthcare Physicians, LLP, 234 AD3d 656, 659; see Many v Lossef, 190 AD3d 721, 724). In light of our determination that the Supreme Court properly denied those branches of the separate motions of the Southside defendants and the South Bay defendants which were for summary judgment dismissing the medical malpractice and wrongful death causes of action insofar as asserted [*4]against each of them, the court properly denied those branches of the separate motions of the Southside defendants and the South Bay defendants which were for summary judgment dismissing the loss of services cause of action insofar as asserted against each of them (see Buzeska v Crystal Run Healthcare Physicians, LLP, 234 AD3d at 659).
"In general, under the doctrine of respondeat superior, a hospital may be held vicariously liable for the negligence or malpractice of its employees acting within the scope of employment, but not for the negligence or malpractice of an independent physician who is not its employee" (Russell v River Manor Corp., 216 AD3d 827, 830, citing Hill v St. Clare's Hosp., 67 NY2d 72, 79). "However, '[a]n exception to this general rule exists where . . . a patient comes to the emergency room seeking treatment from the hospital and not from a particular physician of the patient's choosing'" (Fuessel v Chin, 179 AD3d 899, 901, quoting Muslim v Horizon Med. Group, P.C., 118 AD3d 681, 683). Here, although the Southside defendants established that Kamath was not an employee of Southside, the evidence submitted in support their motion was insufficient to demonstrate, prima facie, that the decedent entered Southside's emergency room seeking treatment from a privately selected physician rather than from the hospital itself (see id. at 901-902; Malcolm v Mount Vernon Hosp., 309 AD2d 704). Accordingly, the Supreme Court properly denied that branch of the Southside defendants' motion which was for summary judgment dismissing so much of the complaint as alleged that Southside was vicariously liable for Kamath's alleged malpractice.
However, the Supreme Court should have granted that branch of the South Bay defendants' motion which was for summary judgment dismissing the lack of informed consent cause of action insofar as asserted against Uyguanco. To establish a cause of action to recover damages for lack of informed consent, a plaintiff must prove "'(1) that the person providing the professional treatment failed to disclose alternatives thereto and failed to inform the patient of reasonably foreseeable risks associated with the treatment, and the alternatives, that a reasonable medical practitioner would have disclosed in the same circumstances, (2) that a reasonably prudent patient in the same position would not have undergone the treatment if he or she had been fully informed, and (3) that the lack of informed consent is a proximate cause of the injury'" (Ciceron v Gulmatico, 220 AD3d at 735 [internal quotation marks omitted], quoting Cox v Herzog, 192 AD3d 757, 758; see Pirri-Logan v Pearl, 192 AD3d 1149, 1151).
Here, the South Bay defendants submissions, including Uyguanco's deposition testimony, the decedent's medical records, written consent forms signed by the decedent, and the affirmation of the South Bay defendants' expert, were sufficient to establish, prima facie, that the decedent was informed of the reasonably foreseeable risks, benefits, and alternatives to the implantation of the pacemaker and that a reasonably prudent person in the decedent's position would not have declined to undergo the surgery had he or she been fully informed (see Ciceron v Gulmatico, 220 AD3d at 735; Pirri-Logan v Pearl, 192 AD3d at 1151). In opposition, the plaintiff failed to raise a triable issue of fact (see Zuckerman v City of New York, 49 NY2d 557, 562).
The parties' remaining contentions are without merit.
BARROS, J.P., WARHIT, VOUTSINAS and WAN, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court